305 P.3d 437

**STATE of Hawai'i, Respondent/Plaintiff–Appellant,**

v.

**Rubin Ikoa CASUGAY–BADIANG, Petitioner/Defendant–Appellee.**

**No. SCWC–11–0000802.**

Supreme Court of Hawai'i.

June 19, 2013.

As Corrected June 28, 2013.

Ronette M. Kawakami (Summer M.M. Kupau, with her on the briefs), for petitioner.

James M. Anderson, for respondent.

ACOBA, McKENNA, and POLLACK, JJ., with RECKTENWALD, C.J., dissenting separately, with whom NAKAYAMA, J., joins.

Opinion of the Court by McKENNA, J.

## I. Introduction

The sole issue before this court is whether a sentencing court has the discretion to sentence a defendant convicted of violating Hawai'i Revised Statutes ("HRS") § 712–1240.8 (1993 & Supp. 2006) (Methamphetamine Trafficking in the Second Degree)[1] under HRS § 706–667 (1993 & Supp.2006) (the "Young Adult Defendants" statute).[2] Specifically, the issue is whether the phrase "Notwithstanding sections 706–620, 706–641, 706–660, 706–669, and any other law to the contrary," found in the sentencing provision of HRS § 712–1240.8, overrides sentencing under HRS § 706–667 as "contrary." We hold that it does not. Therefore, we reverse the ICA's Judgment on Appeal, and affirm the circuit court's Judgment of Conviction and Sentence and Order Denying Motion to Correct Illegal Sentence.

## II. Background

Petitioner/Defendant–Appellee Rubin Ikoa Casugay–Badiang ("Casugay–Badiang") pled guilty to two counts of Methamphetamine Trafficking in the Second Degree, in violation of HRS § 712–1240.8. At Casugay–Badiang's sentencing hearing, both the prosecution and defense requested a minimum sentence of one year in prison, presumably under HRS

1. That statute currently states, as it did at the time of the alleged offense, the following:

 (1) A person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount.
 (2) Methamphetamine trafficking in the second degree is a class B felony for which the defendant shall be sentenced as provided in subsection (3).
 (3) Notwithstanding sections 706–620, 706–640, 706–641, 706–660, 706–669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000; provided that:
 (a) If the person has one prior conviction for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be not less than three years, four months and not greater than six years, eight months;
 (b) If the person has two prior convictions for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be not less than six years, eight months and not greater than ten years; or
 (c) If the person has three or more prior convictions for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be ten years.

2. That statute currently states, as it did at the time of the alleged offense, the following:

 (1) Defined. A young adult defendant is a person convicted of a crime who, at the time of the offense, is less than twenty-two years of age and who has not been previously convicted of a felony as an adult or adjudicated as a juvenile for an offense that would have constituted a felony had the young adult defendant been an adult.
 (2) Specialized correctional treatment. A young adult defendant who is sentenced to a term of imprisonment exceeding thirty days may be committed by the court to the custody of the department of public safety and shall receive, as far as practicable, such special and individualized correctional and rehabilitative treatment as may be appropriate to the young adult defendant's needs.
 (3) Special term. A young adult defendant convicted of a felony, in lieu of any other sentence of imprisonment authorized by this chapter, may be sentenced to a special indeterminate term of imprisonment if the court is of the opinion that such special term is adequate for the young adult defendant's correction and rehabilitation and will not jeopardize the protection of the public. When ordering a special indeterminate term of imprisonment, the court shall impose the maximum length of imprisonment, which shall be eight years for a class A felony, five years for a class B felony, and four years for a class C felony. The minimum length of imprisonment shall be set by the Hawaii paroling authority in accordance with section 706–669. During this special indeterminate term, the young adult shall be incarcerated separately from career criminals, when practicable.
 This section shall not apply to the offenses of murder or attempted murder.

§ 712–1240.8(3), because Casugay–Badiang had no prior criminal record.

The circuit court,[3] on the other hand, sua sponte raised the issue of whether it possessed the discretion to sentence Casugay–Badiang under HRS § 706–667. The circuit court reasoned that it did retain such discretion because HRS § 712–1240.8(3) expressly excluded sentencing under HRS §§ 706–620, –640, –641, –660, and–669, but HRS § 706–667 was not among that list. The circuit court recognized that HRS § 712–1240.8(3) included an additional phrase "and any other law to the contrary," following the five enumerated statutes. To the circuit court, however, the fact that HRS § 706–667 was not among the enumerated statutes "still ke[pt HRS § ] 706–667 in play." The circuit court then sentenced Casugay–Badiang to a "concurrent term of imprisonment of five (5) years in Counts I and II, as a young adult defendant (pursuant to § 706–667, H.R.S.), with a mandatory minimum of one (1) year."

The State then filed its Motion to Correct Illegal Sentence, in which it argued that the circuit court's decision to sentence Casugay–Badiang under HRS § 706–667 "runs contrary to the law imposing sentence upon offenders under HRS § 712–1240.8." At a hearing on the motion, the State rested on its briefing, but defense counsel argued that (1) if the legislature intended for HRS § 712–1240.8(3) to override HRS § 706–667, then it would have included HRS § 706–667 among the five enumerated statutes in HRS § 712–1240.8(3); and (2) if the legislature intended HRS § 706–667 not to apply to methamphetamine trafficking, then it would have amended that statute to include that offense along with murder and attempted murder in HRS § 706–667(3).

The circuit court added that it believed that it could still sentence Casugay–Badiang under HRS § 706–667 because that statute "mitigated," but was not "contrary" to, the sentencing scheme set forth in HRS § 712–1240.8(3). The circuit court issued an Order Denying Motion to Correct Illegal Sentence. The State timely appealed the circuit court's Judgment of Conviction and Sentence and its Order Denying Motion to Correct Illegal Sentence.

Before the ICA, the State argued the following:

> The circuit court abused its discretion in sentencing [Casugay–Badiang] to five years imprisonment under HRS § 706–667 as a young adult defendant, where HRS § 712–1240.8(3) provides: Notwithstanding sections 706–620, 706–640, 706–641, 706–660, 706–669, **and** any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000[.]

(Emphasis in original). The State essentially argued that the plain language of HRS § 712–1240.8(3) mandated sentencing under that statute. In support of its interpretation, the State pointed out that the phrase "notwithstanding any other law to the contrary" in a sentencing provision has previously been construed by this court, in *State v. Dannenberg*, 74 Haw. 75, 837 P.2d 776 (1992), as limiting the discretion of the trial court to take into account any other statutory sentencing scheme. The State further argued that HRS § 706–667 is "contrary" to HRS § 712–1240.8(3), because a five-year indeterminate term under HRS § 706–667 is "completely different" from a ten-year indeterminate term under HRS § 712–1240.8(3).

The ICA agreed with the State. It vacated the circuit court's Judgment of Conviction and Sentence and remanded this case for re-sentencing under HRS § 712–1240.8. *See State v. Casugay–Badiang*, 128 Hawai'i 370, 374, 289 P.3d 1006, 1010 (2012). It held:

> HRS § 712–1240.8 clearly precludes the applicability of sentencing as a young adult defendant under HRS § 706–667 for cases involving methamphetamine trafficking in the second degree because HRS § 706–667 is contrary to HRS § 712–1240.8. The legislature intended to divest the circuit court of its discretion to sentence Casugay–Ba-

---

**3.** The Honorable Glenn J. Kim presided.

diang under any sentencing statute other than HRS § 712–1240.8(3).

128 Hawai'i at 373, 289 P.3d at 1009. The ICA concluded that the circuit court "erred in disregarding the plain language of HRS § 712–1240.8 . . . ." 128 Hawai'i at 374, 289 P.3d at 1010.

## III. Discussion

On certiorari, Casugay–Badiang argues that the "ICA's Opinion simply concludes that 'HRS § 706–667 is contrary to HRS § 712–1240.8' without undertaking a thorough analysis of the construction of both statutes." We now take a closer look at both statutes.

### A. HRS § 712–1240.8

 HRS § 712–1240.8 provides:

**Methamphetamine trafficking in the second degree.** (1) A person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount.

(2) Methamphetamine trafficking in the second degree is a class B felony for which the defendant shall be sentenced as provided in subsection (3).

(3) Notwithstanding sections 706–620, 706–640, 706–641, 706–660, 706–669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000; provided that:
(a) If the person has one prior conviction for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be not less than three years, four months and not greater than six years, eight months;
(b) If the person has two prior convictions for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be not less than six years, eight months and not greater than ten years; or

(c) If the person has three or more prior convictions for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be ten years.

At issue in this case is whether the circuit court had the discretion to sentence Casugay–Badiang to a special five-year indeterminate term of imprisonment under HRS § 706–667 in the face of the following language from HRS § 712–1240.8(3):

Notwithstanding sections 706–620, 706–640, 706–641, 706–660, 706–669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000[.]

This court's foremost obligation in construing a statute is "to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *State v. Valdivia,* 95 Hawai'i 465, 472, 24 P.3d 661, 668 (2001) (citation omitted). "Where the statutory language is unambiguous, the court's sole duty is to give effect to its plain and obvious meaning." *State v. Sakamoto,* 101 Hawai'i 409, 412, 70 P.3d 635, 638 (2003) (citations omitted).

### 1. A Plain Language Reading of HRS § 712–1240.8(3) in Favor of the State

This court previously interpreted the statutory phrase "notwithstanding any other law to the contrary" as removing a circuit court's discretion to sentence under any other law. An early case interpreting the phrase "any other law to the contrary" was *State v. Rice,* 66 Haw. 101, 657 P.2d 1026 (1983). In the context of whether the prostitution statute allowed for deferred acceptance of guilty pleas, this court concisely held, "[W]e think that § 853–1, HRS, is 'any other law to the contrary' and that the court below therefore correctly construed § 712–1200(4) as taking away its power to grant deferred acceptance

of guilty pleas in prostitution cases." 66 Haw. at 102, 657 P.2d at 1026.

In *Dannenberg,* this court once again held that the trial court abused its discretion in granting a defendant's motion for a DANC plea to a charge of prostitution under HRS § 712–1200, which, at that time, provided in relevant part:

> Notwithstanding any other law to the contrary, a person convicted of committing the offense of prostitution shall be sentenced as follows: [for the first offense, a fine or community service and/or a prison term of not more than 30 days; for a subsequent offense, a fine and a prison term of 30 days, without possibility of suspension of sentence or probation.]

74 Haw. at 77, 79–80, 837 P.2d at 777, 778. The *Dannenberg* court reaffirmed *Rice* and clarified its reasoning in that case as follows:

> As Defendant points out, HRS § 712–1200 is ambiguous as to whether the 'notwithstanding any other law to the contrary' refers to HRS ch. 853 (1985 & Supp. 1991) which is the statutory authority for permitting discretionary deferred acceptance of guilty pleas and deferred acceptance of nolo contendere pleas. Defendant's argument that the sentencing provisions of HRS § 712–1200 only apply where defendant is actually 'convicted' and that a DANC is not a conviction is well-taken. However, to permit a trial court to defer the entry of a plea in order to avoid a conviction permits the court to avoid the sentencing scheme created by the legislature specifically for prostitution cases and is therefore repugnant to the legislative intent in enacting the prostitution law.

74 Haw. at 80, 837 P.2d at 778–79. This court then turned to the legislative history of the prostitution statute, which revealed that "[t]he intent was clearly to limit the discretion of the trial court in sentencing prostitution offenses and to provide a mandatory sentencing structure unlike that for other petty misdemeanors." 74 Haw. at 81, 837 P.2d at 779. Thus, this court held that

DANC's were not available for prostitution charges, "[s]ince it is clear that the language of the statute anticipates mandatory sentencing for prostitution offenders, and the legislative history reveals an intent to remove judicial discretion from sentencing[.]" 74 Haw. at 83, 837 P.2d at 779–80.[4] Thus, under *Dannenberg,* HRS § 712–1240.8(3)'s "notwithstanding any other law to the contrary" phrase indicates that the circuit court lacked the discretion to sentence Casugay–Badiang under any other sentencing scheme not found in HRS § 712–1240.8(3), which would include HRS § 706–667.

Numerous cases since *Dannenberg* interpreted the phrase "notwithstanding any other law to the contrary." In *State v. Smith,* 103 Hawai'i 228, 234, 81 P.3d 408, 414 (2003), we synthesized these cases and held that the interpretation of the phrase "notwithstanding any other law to the contrary" has been, since *Rice,* a plain-language interpretation divesting the sentencing court of discretion to sentence under any other scheme:

> [T]his court has repeatedly employed a plain-language analysis in interpreting statutes that contain the phrase, 'notwithstanding any other law to the contrary....' *See State v. Hamili,* 87 Hawai'i 102, 105, 952 P.2d 390, 393 (1998)(reaffirming this court's holding in *State v. Rice, infra* ); *State v. Dannenberg,* 74 Haw. 75, 80, 837 P.2d 776, 778 (1992)(reaffirming this court's holding in *Rice, infra* ); *State v. Mun Chung Tom,* 69 Haw. 602, 604, 752 P.2d 597, 598 (1988)(analogizing the language of the driving under the influence (DUI) statute to the wording of the prostitution statute, *infra,* and noting that "the language of the DUI statute [ (i.e., a person convicted 'shall be sentenced as follows without possibility of probation') ] is sufficiently clear in mandating the sentence to be imposed"); *State v. Rice,* 66 Haw. 101, 657 P.2d 1026 (1983) (holding that, where the prostitution statute provides "notwithstanding any other law to the contrary, a person convicted of committing the offense of prostitution shall be sentenced as fol-

---

4. *Dannenberg* was later superseded by statute. The prostitution statute was later amended to expressly allow for probation, and, therefore,

DANC pleas. *See State v. Klie,* 116 Hawai'i 519, 523, 174 P.3d 358, 362 (2007).

lows[,]" the phrase " 'any other law to the contrary' ... takes away [the trial court's] power to grant deferred acceptance of guilty pleas in prostitution cases").

*See also State v. Kamana'o,* 118 Hawai'i 210, 218, 188 P.3d 724, 732 (2008)("The express language of HRS § 706–606.5, '[n]othwithstanding ... any other law to the contrary ... [,] 'clearly limits the applicability of HRS § 706–668 in cases involving the '[s]entencing of repeat offenders.' HRS § 706–668 is precisely the type of 'law to the contrary' described in HRS § 706–606.5.")

Moreover, within the phrase "notwithstanding any other law to the contrary," a plain language, dictionary definition of "contrary" is "being opposite to or in conflict with each other[.]" Merriam Webster's Collegiate Dictionary 765 (10th Ed. 1989)(cited in *State v. Schnabel,* 127 Hawai'i 432, 448, 279 P.3d 1237, 1253 (2012)). " '[T]wo statutes conflict' where '[i]t is not possible to give effect to both[.]" *Id.* (citing *State v. Richie,* 88 Hawai'i 19, 35, 960 P.2d 1227, 1243 (1998)). In Casugay–Badiang's case, HRS § 706–667 is seemingly contrary to HRS § 712–1240.8(3) because "[i]t is not possible to give effect to both" an indeterminate five-year term of imprisonment under the former statute and an indeterminate ten-year term of imprisonment under the latter. Under *Richie,* then, and in contrast to the circuit court's reasoning, a sentence under HRS § 706–667 is not just "mitigating" in relation to HRS § 712–1240.8(3); it is contrary to HRS § 712–1240.8(3). Thus, under *Richie,* HRS § 706–667 would appear to be included in HRS § 712–1240.8(3)'s phrase "notwithstanding ... any other law to the contrary[.]"

## 2. A Plain Language Reading of HRS § 712–1240.8(3) in Favor of Casugay–Badiang

On the other hand, HRS § 706–667 is not included among the five enumerated statutes in HRS § 712–1240.8(3)'s "notwithstanding" clause, evidencing no express legislative intent to exclude it as a sentencing alternative. This court previously decided a case in which HRS § 706–667 was considered to be a "sentencing alternative" in the face of a sentencing statute that excluded "any other law to

the contrary." In *State v. Lau,* 73 Haw. 259, 831 P.2d 523 (1992), a case decided four months before *Dannenberg,* the defendant ("Lau") was sentenced to an indeterminate twenty-year term of imprisonment following a class A felony drug conviction for cocaine trafficking. 73 Haw. at 260–61, 831 P.2d at 524.

On appeal, he argued that "the sentencing court committed reversible error by not stating its reasons for imposing a twenty year sentence ... [and that] it is unknown if the court considered the alternative eight year sentence under the young adult defendants statute for which he was qualified." 73 Haw. at 260–61, 831 P.2d at 523–24. This court held:

> Our review of the record reveals that the sentencing court had the benefit of a presentence report, the arguments of counsel, which included references to both the ordinary twenty year term and the special indeterminate term of eight years, and appellant's personal statement. Thus, we can reasonably infer that the court did consider the sentencing alternatives, and we therefore affirm.

73 Haw. at 260, 831 P.2d at 524.

This was so, even though at the time *Lau* was decided, HRS § 706–659 (1985) provided, "Notwithstanding ... any other law to the contrary, a person who has been convicted of a class A felony shall be sentenced to an indeterminate term of imprisonment of twenty years without possibility of suspension of sentence or probation." (emphasis added). This court stated that the sentencing court could sentence Lau under HRS § 706–667, without discussing HRS § 706–659's express "notwithstanding any other law to the contrary" language, which is similar to HRS § 712–1240.8(3)'s "notwithstanding" language. 73 Haw. at 260, 831 P.2d at 524. In fact, we stated, "Once the court determines that imprisonment is necessary, the court 'is free ... to choose' between the ordinary term or the special indeterminate sentence under the young adult defendants statute." 73 Haw. at 263, 831 P.2d at 525 (citing HRS § 706–667 commentary). Therefore, *Lau* is in tension with *Dannen-*

*berg,* as well as *Rice,* which existed at the time *Lau* was decided.

■ The legislature amended HRS § 706–659 twice since *Lau* was decided, with neither amendment expressly eliminating HRS § 706–667 as a sentencing alternative, where applicable.[5] *See* 1994 Haw. Sess. Laws Act 229, § 3 at 558; 2012 Haw. Sess. Laws Act 292, § 4 at 993. *Lau's* interpretation of HRS § 706–659 to allow for sentencing under HRS § 706–667 appears to have been untouched by the legislature, which is "'presumed [to] know the law when enacting statutes,' including this court's interpretations of statutory language." *State v. Reis,* 115 Hawai'i 79, 97, 165 P.3d 980, 998 (2007); *Terr. v. Ota,* 36 Haw. 80, 98–99 (1942)("While … legislative inaction does not amount to legislative construction, it does indicate a lack of active disagreement with [judicial interpretation] … [L]egislative inaction tends to indicate agreement.")

■ In addition, even if HRS § 706–667 is "contrary" to HRS § 712–1240.8(3)'s sentencing scheme, the following rules of statutory interpretation would favor Casugay–Badiang's position:

First, legislative enactments are presumptively valid and "should be interpreted [in such a manner as] to give them effect." Second, "laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." Third, "where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored."

*Richardson v. City & County of Honolulu,* 76 Hawai'i 46, 54–55, 868 P.2d 1193, 1201–02 (1994) (citations omitted).

This court has already considered HRS § 706–667 to be a specific statute, "involv[ing] specialized treatment for a limited group of defendants," as compared to other statutes that refer to "any sentence." *State v. Putnam,* 93 Hawai'i 362, 371, 3 P.3d 1239, 1248 (2000). Thus, in comparing statutes concerning the subject matter of sentencing, *Putnam* observed that "HRS § 706–667 is to be favored and would control," were the defendant in that case age-eligible for young adult defendant sentencing, which she was not. *Id.*

## B. HRS § 706–667

We now turn to an examination of HRS § 706–667, which provides:

**Young adult defendants.** (1) Defined. A young adult defendant is a person convicted of a crime who, at the time of the offense, is less than twenty-two years of age and who has not been previously convicted of a felony as an adult or adjudicated as a juvenile for an offense that would have constituted a felony had the young adult defendant been an adult.

(2) Specialized correctional treatment. A young adult defendant who is sentenced to a term of imprisonment exceeding thirty days may be committed by the court to the custody of the department of public safety and shall receive, as far as practicable, such special and individualized correctional and rehabilitative treatment as may be appropriate to the young adult defendant's needs.

(3) Special term. A young adult defendant convicted of a felony, in lieu of any other sentence of imprisonment authorized by this chapter, may be sentenced to a special indeterminate term of imprison-

---

5. Also of note, the legislature included the "notwithstanding" clause when it enacted HRS § 706–659 in 1980. 1980 Haw. Sess. Laws Act 293, § 1 at 562–63. HRS § 706–667 existed at that time, having been enacted in 1972. *See* 1972 Haw. Sess. Laws Act 9, § 1 at 81–82. HRS § 706–667 was not included among the other statutes in the "notwithstanding clause" of HRS § 706–659. 1980 Haw. Sess. Laws Act 293, § 1

at 562–63. Also in 1980, the legislature amended HRS § 706–667 but did not reference or exclude HRS § 706–659 from HRS § 706–667. 1980 Haw. Sess. Laws Act 295, §§ 2, 3 at 563. Therefore, young adult defendant sentencing appears to be generally available for class A felony convictions, and has been since the time HRS § 706–659 was enacted.

ment if the court is of the opinion that such special term is adequate for the young adult defendant's correction and rehabilitation and will not jeopardize the protection of the public. When ordering a special indeterminate term of imprisonment, the court shall impose the maximum length of imprisonment, which shall be eight years for a class A felony, five years for a class B felony, and four years for a class C felony. The minimum length of imprisonment shall be set by the Hawaii paroling authority in accordance with section 706–669. During this special indeterminate term, the young adult shall be incarcerated separately from career criminals, when practicable.

This section shall not apply to the offenses of murder or attempted murder.

### 1. A Plain Language Reading of HRS § 706–667 in Favor of the State

In the face of HRS § 712–1240.8(3)'s "notwithstanding ... any other law to the contrary" language, the permissive "may be sentenced" in HRS § 706–667 seemingly lacks the force necessary to demonstrate that sentencing under HRS § 706–667 overrides sentencing under HRS § 712–1240.8(3). When HRS §§ 706–667 and 712–1240.8(3) are read together, the "notwithstanding ... any other law to the contrary" language indicates that a special five-year indeterminate term of imprisonment under HRS § 706–667 is contrary to a ten-year indeterminate term of imprisonment under HRS § 712–1240.8(3).

■ As the United States Supreme Court has observed, "[I]n construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section. Likewise, the Courts of Appeals generally have 'interpreted similar "notwithstanding" language ... to supersede all other laws, stating that "[a] clearer statement is difficult to imagine."'" *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993) (citations omitted).

### 2. A Plain Language Reading of HRS § 706–667 in Favor of Casugay–Badiang

On the other hand, the plain language of HRS § 706–667 also states, "A young adult defendant convicted of a felony, in lieu of any other sentence of imprisonment authorized by this chapter, may be sentenced to a special indeterminate term of imprisonment." All sentences for all offenses are governed by "this chapter," meaning Chapter 706.[6] *See* HRS § 706–600 (1993)("No sentence shall be imposed otherwise than in accordance with this chapter."); HRS § 706–660 cmt. (1993)("This section establishes that dispositions for all offenses—whether defined within or outside the Penal Code—are to be imposed in accordance with this chapter and ... 'the only dispositions authorized are those permitted by the Code.'").

In addition, facially, the only limit on the application of HRS § 706–667 as a sentencing option appears in subsection (3): "This section shall not apply to the offenses of murder and attempted murder." Methamphetamine Trafficking in the Second Degree is not included among these offenses.

This court previously construed the limitation found in subsection (3) in favor of young adult defendants. In *State v. Pacariem*, 67 Haw. 46, 47, 677 P.2d 463, 464 (1984), we faced the issue of whether young adult defendant sentencing was available following a conviction for attempted murder. At the time, HRS § 706–667 expressly stated that murder was the only offense for which young adult defendant sentencing was unavailable. 67 Haw. at 47 n. 1, 677 P.2d 463 n. 1.

The State appealed the defendant's young adult defendant sentence, arguing that the sentencing court should have sentenced the defendant under the more recently passed HRS § 706–660.1, which mandated a sentence of life imprisonment (with or without parole, depending upon the circumstances of the attempted murder). 67 Haw. at 47–48, 677 P.2d at 464. The State argued that the legislature intended to repeal HRS § 706–667 by implication, as to sentencing for the

---

**6.** We therefore reject the State's argument that HRS § 706–667 does not apply to HRS § 712–

1240.8 simply because HRS § 712–1240.8 is not found within Chapter 706.

offense of attempted murder, as evidenced in the Commentary to HRS § 706–660.1, which stated that the "sentences for attempted murder ... would be similar to those provided for murder," because "in either offense the intent to kill was the same." 67 Haw. at 47 n. 2, 48, 677 P.2d at 463 n. 2, 464. The State argued that, when a general and specific statute pertain to the same subject matter, the specific statute (which it argued was HRS § 706–660.1) should supersede and be deemed an exception to the general statute (which it argued was HRS § 706–667). *Id.*

We rejected the State's argument, noting that that rule of statutory construction was "qualified by the proviso that the conflict between the general and specific statutes in question be 'plainly irreconcilable.'" *Id.* (citation omitted). Further, we held:

> H.R.S. § 706–667 specifically provides that it is not applicable to the offense of murder. It also provides that the sentencing court has the discretion to apply H.R.S. § 706–667 "... in lieu of any other sentence of imprisonment authorized by this chapter." These two provisions of H.R.S. § 706–667 are not plainly irreconcilable with H.R.S. § 706–660.1, but rather invest the sentencing court with discretion to apply H.R.S. § 706–667 to a young adult defendant, as long as the offense in question is not murder.

67 Haw. at 48, 677 P.2d at 464–65. We then held that repeals by implication are disfavored, and "that if effect can reasonably be given to two statutes, it is proper to presume that the earlier statute is intended to remain in force and that the later statute did not repeal it." *Id.*

Similarly, in the instant appeal, the State's argument that HRS § 706–667 sentencing is no longer available under HRS § 712–1240.8 could be construed as an argument that HRS § 712–1240.8 repealed, by implication, young adult defendant sentencing as to the offense of Methamphetamine Trafficking in the Second Degree. Following the logic of *Pacar-iem*, however, it can be argued that the sentencing court remained invested with discretion to sentence Casugay–Badiang under HRS § 706–667 in lieu of any other sentence of imprisonment, specifically the sentence set forth under HRS § 712–1240.8 for Methamphetamine Trafficking in the Second Degree, as the only offenses for which young adult sentencing are not available remain murder and attempted murder. Therefore, HRS § 712–1240.8, even with its "notwithstanding" language, did not repeal by implication the sentencing alternative available under HRS § 706–667.[7]

### C. Legislative History of Act 230 of 2006

In light of these two competing and equally viable plain language readings of HRS §§ 712–1240.8 and 706–667, legislative history may be a helpful aid in understanding whether HRS § 712–1240.8 overrides HRS § 706–667, or whether HRS § 706–667 remains a sentencing alternative. The legislature addressed both statutes in the same Act. *See* 2006 Haw. Sess. Laws Act 230, at 996–1025. Therefore, the actions the legislature took (or did not take) in clarifying the relationship between these two statutes in Act 230 is worth examining.

Act 230 enacted HRS § 712–1240.8 after repealing an earlier version of the methamphetamine trafficking statute, HRS § 712–1240.6.2006 Haw. Sess. Laws Act 230, § 4 at 998–99 (enacting Chapter 712, part IV); 1024 (repealing HRS § 712–1240.6). Simultaneously, Act 230 also amended HRS § 706–667 to provide for the availability of young adult defendant sentencing for persons less than twenty-two years of age at the "time of the offense" rather than at the "time of sentencing." 2006 Haw. Sess. Laws Act 230, § 25 at 1013. Although both HRS §§ 712–1240.8 and 706–667 were dealt with in the same Act, the legislature made no apparent effort to cross-reference one to the other.

---

7. In 1986, the legislature amended HRS § 706–667 to expressly include attempted murder as an offense for which young adult sentencing is not available. 1986 Haw. Sess. Laws Act 314, § 44 at 614. Although the legislature did not discuss *Pacariem*, it can be surmised that the amendment was made in response to *Pacariem*. *See Ota*, 36 Haw. at 98–99 ("It is a common practice of legislative bodies to enact laws to circumvent judicial constructions deemed by the legislators to be contrary to the true meaning of the statute construed.").

Two conclusions might be drawn from the legislature's inaction: one that supports the State's argument that HRS § 706–667 is not a sentencing alternative following a conviction under HRS § 712–1240.8, and one that supports Casugay–Badiang's argument that it is.

### 1. Analysis of Act 230 in Favor of the State

Act 230 was an omnibus crime bill, and neither HRS § 706–667 nor HRS § 712–1240.8 (nor the interaction between these two statutes) was debated or discussed in the Standing Committee Reports, Conference Committee Reports, or on the House or Senate floor. This was probably because the bill that became Act 230 was the result of the work of the Committee to Conduct a Comprehensive Review of the Hawai'i Penal Code, a committee created by Act 125 of the 2005 Legislative Session which submitted a Report to the Legislature proposing the addition of seven new statutory sections, amendments to 46 existing statutory sections, and the repeal of one statutory section—proposals the Legislature largely adopted without discussion. Compare 2006 Haw. Sess. Laws Act 230 at 996–1025 with Report of the Committee to Conduct a Comprehensive Review of the Hawai'i Penal Code ("Report") at 11–57 (2005). Hence, the legislature's failure to expressly cross-reference HRS § 706–667 with HRS § 712–1240.8 does not necessarily reflect a deliberate intent to retain HRS § 706–667 as a sentencing alternative to HRS § 712–1240.8(3). If anything, such cross-reference was unnecessary, given the legislature's drafting of HRS § 712–1240.8(3) to exclude "any other law to the contrary," with young adult defendant five-year indeterminate term sentencing contrary to the ten-year indeterminate term called for in HRS § 712–1240.8(3). See Cisneros, 508 U.S. at 18, 113 S.Ct. 1898 ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section ... A clearer statement is difficult to imagine.") (citation omitted).

Moreover, the Committee that drafted the legislative proposals that eventually became Act 230 identified crystal methamphetamine abuse as "the dominant issue in the criminal justice system," affecting "most criminal cases" and "most of the defendants who are sent to prison." Report at 5. Thus, to the Committee, the problem of methamphetamine in general was of primary concern.

### 2. Analysis of Act 230 in Favor of Casugay–Badiang

Nevertheless, the legislature's amendment to HRS § 706–667 in 2006 to set the defendant's eligibility date for young adult defendant sentencing as the "time of the offense," versus the "time of sentencing" also indicates the legislature's intent to increase a sentencing court's discretion to apply HRS § 706–667 by increasing the pool of defendants eligible for young adult sentencing. There is no legislative discussion of the amendment to HRS § 706–667. The Report, however, explains that the change was intended to prevent the unfairness that resulted when the would-be young adult defendant aged out of eligibility for sentencing under HRS § 706–667 simply based on when the sentencing court scheduled his or her sentencing hearing. See Report at 27r. Thus, the increased sentencing discretion added to HRS § 706–667 contradicts any purported legislative intent to simultaneously decrease sentencing discretion via the enactment of HRS § 712–1240.8. This is particularly true where the legislature did not include Methamphetamine Trafficking in the Second Degree among the other offenses for which young adult defendant sentencing is unavailable. See HRS § 706–667(3)("This section shall not apply to the offenses of murder or attempted murder.").

The legislature could have cross-referenced HRS §§ 706–667 and 712–1240.8, if it had so intended, in Act 230. Tellingly, Act 230 also amended another statute, HRS § 706–622.5, to expressly exclude HRS § 712–1240.8.2006 Haw. Sess. Laws Act 230, § 18 at 1009. HRS § 706–622.5 states, in relevant part, with emphasis added, "Notwithstanding section 706–620(3), a person convicted for the first or second time for ...

any felony offense under part IV of chapter 712 ... [but] not including any methamphetamine trafficking offenses under sections 712–1240.7 and 712–1240.8, is eligible to be sentenced to probation...." Thus, if the legislature intended to exclude Methamphetamine Trafficking from HRS § 706–667, it could have done so, as it did with HRS § 706–622.5, but it did not.

### D. Policy Considerations

Given the difficulties in divining the legislative intent behind Act 230, an examination of the legislature's stated policies behind HRS §§ 706–667 and 712–1240.8 may provide needed guidance. Both statutes were chosen for unique treatment by our legislature. Both statutes are undergirded by powerful policy considerations.

### 1. Policy Considerations behind Hawaiʻi's Carve–Out for Methamphetamine Trafficking

On one hand, the legislature has singled out methamphetamine trafficking as requiring sentencing separate from the general sentencing provisions found in Chapter 706. The legislature first carved out methamphetamine trafficking for separate sentencing in 2004 when it passed Act 44. 2004 Haw. Sess. Laws Act 44, § 3 at 204–27; *see also* H. Stand. Comm. Rep. No. 495–04, in 2004 House Journal, at 1604 ("Amending the new offense of unlawful methamphetamine trafficking to .... [s]pecify that other statutes relating to sentencing do not apply to the offense of methamphetamine trafficking[.]"). Act 44 resulted in the codification of HRS § 712–1240.6, which set classes of methamphetamine trafficking offenses according to the weight of methamphetamine, and set mandatory prison terms and fines according to the class of offense. HRS § 712–1240.6 (Supp.2004).

The new carve-out was pursuant to the legislature's finding "that new and enhanced criminal penalties are needed to protect [Hawaiʻi's] citizens from the effects of the ice epidemic." 2004 Haw. Sess. Laws at 205. The legislature stated that "the use of and addiction to crystal methamphetamine (especially in the form known as 'ice') ... has reached epidemic proportions and is currently considered a public health crisis." 2004 Haw. Sess. Laws at 204. HRS § 712–1240.6 was repealed in 2006 and replaced with our current methamphetamine trafficking statutes, HRS Chapter 712, Part IV.

### 2. Policy Considerations behind Hawaiʻi's Young Adult Defendant Sentencing

On the other hand, the legislature has also singled out young adult defendants for specialized sentencing due to their immaturity and potential for rehabilitation. HRS § 706–667 is based on the Model Penal Code, Tentative Draft 7. *Putnam*, 93 Hawaiʻi at 369, 3 P.3d at 1246 ("HRS § 706–667 is based on the Young Adult Offender statute, Section 6.05 of the Model Penal Code, and is in relevant part similarly worded."). The Commentary to HRS § 706–667 contains a cross-reference to the Model Penal Code, Tentative Draft No. 7, comments at 24, which explains the general policy behind young adult sentencing as follows:

> [T]he incidence of criminality and of recidivism in this age span is distressingly and disproportionately high; that these are still, however, formative years in personal development; and that these individuals involved have many years of active life ahead. Prudence and humanity combine, therefore, to argue for a specialized and concentrated effort in this area.

Model Penal Code, Tentative Draft No. 7, comments at 24 (1957); *Putnam*, 93 Hawaiʻi at 369–70, 3 P.3d at 1246–47 (citing to the Model Penal Code, Tentative Draft No. 7); *see also* Model Penal Code Part I Commentaries, vol. 3 at 75 (1985)(finalizing draft comments similarly).

The Commentary to HRS § 706–667 also explains the philosophy behind discretionary sentencing and special terms of imprisonment for young adult defendants:

> [T]he Code adopts a flexible approach in sentencing. The court is not compelled to impose a special term in the case of a convicted young adult. It may, according to the provisions of Part II of this Chapter, suspend the imposition of sentence or sen-

tence the defendant to probation. If the court determines that imprisonment is necessary, the court is free, within the limitations heretofore set forth, to choose between the special term authorized by this section and the ordinary and extended terms authorized by prior sections in this Part. Subsection (3) merely authorizes the employment of a special, more limited term of imprisonment "if the court is of the opinion that such special term is adequate for . . . [the defendant's] correction and rehabilitation and will not jeopardize the protection of the public." Assuming the court is satisfied that this condition can be met, there seems no reason for not allowing the court, if it chooses, to protect the young offender from the longer maxima provided for felonies.

HRS § 706–667 cmt. (1993 & Supp. 2006)(emphasis added). Other passages in the Model Penal Code, Tentative Draft 7, illuminate further policy reasons behind specialized young adult sentencing. For example, as to why youthful offenders should receive a shorter term of imprisonment than ordinary offenders, the American Law Institute reasoned as follows:

> We recognize the theory . . . that . . . a longer term is more reformative than a short, definite sentence to jail. This is a case, however, where we think that theory has outrun a sense of just proportion. Simple regard for personal liberty—of young no less than of mature adults—requires, in our view, that younger people not be subject to more onerous sentences because of their immaturity. We can perceive no adequate basis for sentencing young adults, whose offenses reveal no substantial danger to the community, to sentences as long as those imposed for major crimes.

Model Penal Code, Tentative Draft 7, comments at 28.

### IV. Conclusion

 There are strong arguments both for and against retaining discretion to sen-

tence under HRS § 706–667 following a conviction under HRS § 712–1240.8. As analyzed above, however, there exists enough ambiguity in the language of both statutes, their relationship to each other, and the legislature's actions (and inaction) with regard to each that the rule of lenity applies in this case. "[W]here a criminal statute is ambiguous, it is to be interpreted according to the rule of lenity. Under the rule of lenity, the statute must be strictly construed against the government and in favor of the accused." *State v. Bayly*, 118 Hawai'i 1, 15, 185 P.3d 186, 200 (2008) (citation omitted).

In addition, based on the totality of the circumstances, it appears the legislature considers HRS § 706–667 a separate and unique sentencing overlay to all other indeterminate term sentencing statutes (except murder and attempted murder) such that HRS § 706–667 would not be "contrary" to HRS § 712–1240.8(3).[8] First, the plain language of HRS § 712–1240.8 does not enumerate HRS § 706–667 among the other five statutes excluded from consideration in sentencing for Methamphetamine Trafficking in the Second Degree. HRS § 712–1240.8(3). Further, the catch-all phrase "notwithstanding any other law to the contrary," under Lau, has not been interpreted to limit the availability of young adult sentencing. *Lau*, 73 Haw. at 263, 831 P.2d at 525. Even if HRS § 706–667 could be viewed as conflicting with HRS § 712–1240.8(3)'s sentencing provisions, we have already held that the young adult defendant sentencing statute, as the more specific statute, "is to be favored and would control," over other general sentencing statutes like HRS § 712–1240.8(3). *Putnam*, 93 Hawai'i at 371, 3 P.3d at 1248.

Second, young adult defendant sentencing is "in lieu of any other sentence of imprisonment" for any other offense except murder and attempted murder. HRS § 706–667(3). Under *Pacariem*, the limitation set forth in HRS § 706–667(3) is restrictively viewed. *Pacariem*, 67 Haw. at 48, 677 P.2d at 464–65. Methamphetamine Trafficking in the Second

---

**8.** If the legislature disagrees with our interpretation of HRS § 706–667, as it apparently did following *Pacariem*, it has the power to amend HRS § 706–667 (and/or HRS § 712–1240.8) to clarify that young adult defendant sentencing is not available following a conviction for Methamphetamine Trafficking in the Second Degree.

Degree is not listed along with murder and attempted murder, indicating that the court retains discretion to sentence under HRS § 706–667 following a conviction under HRS § 712–1240.8.

Third, when the legislature simultaneously amended HRS § 706–667 and enacted HRS § 712–1240.8 in 2006, it did not cross-reference those statutes with each other to indicate that young adult sentencing was not available following a conviction under HRS § 712–1240.8.2006 Haw. Sess. Laws Act 230, §§ 4, 25 at 998–99, 1013. Through that same act, the legislature demonstrated its ability to so cross-reference when it excluded HRS § 712–1240.8 from HRS § 706–622.5.2006 Haw. Sess. Laws Act 230, § 18 at 1008. Therefore, it appears that the legislature did not intend to exclude HRS § 706–667 as a sentencing alternative to HRS § 712–1240.8(3).

Fourth, the policy considerations behind HRS § 706–667 indicate that young adult defendants are intended to be spared from the same sentences imposed on adults for major crimes like methamphetamine trafficking. Model Penal Code, Tentative Draft 7, comments at 28.

▆▆▆ As such, we hold that the sentencing court did retain discretion to sentence Casugay–Badiang under HRS § 706–667. Accordingly, the ICA's Judgment on Appeal is reversed. The circuit court's Judgment of Conviction and Sentence and Order Denying Motion to Correct Illegal Sentence are affirmed.

Dissenting Opinion by RECKTENWALD, C.J., in which NAKAYAMA, J., joins.

I respectfully dissent. The statute governing Methamphetamine Trafficking in the Second Degree provides that a defendant "shall be sentenced" pursuant to that statute, "[n]otwithstanding ... any other law to the contrary[.]" Hawai'i Revised Statutes (HRS) § 712–1240.8 (Supp.2006). In my view, this language reflects the legislature's clear intent that a defendant convicted of Methamphetamine Trafficking in the Second Degree be sentenced pursuant to HRS § 712–1240.8, to the exclusion of all other sentencing schemes, including HRS § 706–667 (Supp. 2006), the Young Adult Defendants statute. Accordingly, I would affirm the judgment of the Intermediate Court of Appeals, which vacated Rubin Ikoa Casugay–Badiang's sentence imposed pursuant to HRS § 706–667, and remanded for resentencing pursuant to HRS § 712–1240.8.

"[T]he fundamental starting point for statutory-interpretation is the language of the statute itself." *First Ins. Co. of Hawaii v. A & B Props.*, 126 Hawai'i 406, 414, 271 P.3d 1165, 1173 (2012). "[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." *Id.* Here, HRS § 712–1240.8 provides:

(1) A person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount.

(2) Methamphetamine trafficking in the second degree is a class B felony for which the defendant shall be sentenced as provided in subsection (3).

(3) Notwithstanding sections 706–620, 706–640, 706–641, 706–600, 706–669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000; provided that:

(a) If the person has one prior conviction for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be not less than three years, four months and not greater than six years, eight months;

(b) If the person has two prior convictions for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be not less than six years, eight months and not greater than ten years; or

(c) If the person has three or more prior convictions for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be ten years.

(Emphasis added).

"[T]his court has repeatedly employed a plain-language analysis in interpreting statutes that contain the phrase, 'notwithstanding any other law to the contrary[.]' " *State v. Smith*, 103 Hawaiʻi 228, 234, 81 P.3d 408, 414 (2003) (citations omitted). We have held that this language divests the sentencing court of discretion to sentence under any sentencing scheme other than that specified by the applicable statute. *Id.; see also State v. Rice*, 66 Haw. 101, 657 P.2d 1026 (1983) (holding that, where the prostitution statute provides for specific sentencing "[n]otwithstanding any other law to the contrary," the trial court lacks the power to grant a deferred acceptance of guilty plea in prostitution cases); *State v. Dannenberg*, 74 Haw. 75, 80, 837 P.2d 776, 778–79 (1992) (reaffirming *Rice*); *cf. State v. Tom*, 69 Haw. 602, 604, 752 P.2d 597, 598 (1988) (referencing *Rice*, and holding that, where the driving under the influence statute provides that the defendant "shall be sentenced" pursuant to that statute, the trial court lacks the power to grant a deferred acceptance of no contest plea in driving under the influence cases).

Moreover, HRS § 706–667 is contrary to HRS § 712–1240.8 because it allows for an indeterminate five-year term of incarceration, rather than the ten-year term required under HRS § 712–1240.8.[1] Thus, it is not possible to give effect to both sentencing schemes for the same offense. *See State v. Richie*, 88 Hawaiʻi 19, 35, 960 P.2d 1227, 1243 (1998) (noting that two statutes conflict where it is not possible to give effect to both). Generally, "[w]here there is a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter, the specific will be favored." *State v. Hussein*, 122 Hawaiʻi 495, 524, 229 P.3d 313, 342 (2010). However, in the instant case, HRS § 712–1240.8 itself dictates that it shall govern "notwithstanding . . . any other law to the contrary[.]"

In sum, the plain language of HRS § 712–1240.8 is clear and sweeping: it requires that a defendant convicted of the offense of Methamphetamine Trafficking in the Second Degree be sentenced to, inter alia, an indeterminate ten-year term of incarceration, with the mandatory minimum term to be set within specified ranges based on the defendant's prior offenses for methamphetamine trafficking, if any. This sentence is to be imposed regardless of alternative sentencing provisions set forth in "any other law to the contrary[.]" Accordingly, sentencing pursuant to HRS § 706–667 is unavailable.

*State v. Lau*, 73 Haw. 259, 831 P.2d 523 (1992), is not to the contrary. There, this court considered whether the sentencing court erred in failing to state its reasons on the record in choosing between a twenty-year sentence for a class A felony and an eight-year sentence pursuant to the Young Adult Defendants statute. *Id.* at 260–61, 831 P.2d at 523–24. Although HRS § 706–659 provided for a twenty-year term for class A felonies "notwithstanding any other law to the contrary," this court noted that the defendant was qualified to be sentenced under the Young Adult Defendants statute due to his age. *Id.* at 260, 831 P.2d at 524. However, this court did not resolve whether application of the Young Adult Defendants statute was precluded by the phrase "notwithstand-

---

1. The legislature was not required to expressly enumerate HRS § 706–667 among the statutes excluded from consideration in relation to a sentence for Methamphetamine Trafficking in the Second Degree, *see* majority opinion at 28, because HRS § 706–667 constitutes "<u>any</u> other law to the contrary," *see* HRS § 712–1240.8 (emphasis added). Respectfully, by limiting HRS § 712–1240.8 to only those statutes expressly enumerated, the majority renders the phrase "any other law to the contrary" superfluous, contrary to a canon of statutory construction to which we have consistently adhered. *See State v. Keawe*, 107 Hawaiʻi 1, 5, 108 P.3d 304, 308 (2005) ("It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." (citation, internal quotation marks, and ellipsis omitted)).

ing any other law to the contrary," and that issue was not before the court. *See State v. Kikuta,* 125 Hawai'i 78, 100 n. 2, 253 P.3d 639, 661 n. 2 (2011) (noting that a case cannot implicitly stand for a proposition that the court did not address). Respectfully, by reading *Lau* as supporting Casugay–Badiang's position, the majority abrogates decades of this court's precedent that has held to the contrary. *See, e.g., Dannenberg,* 74 Haw. at 80, 837 P.2d at 778–79; *Smith,* 103 Hawai'i at 234, 81 P.3d at 414.

Moreover, despite the plain language of the statute and this court's case law dispositively interpreting the phrase "notwithstanding any other law to the contrary," the majority relies on legislative history to conclude that HRS § 706–667 is a sentencing alternative to HRS § 712–1240.8. *See* majority opinion at 28–30. Respectfully, however, the legislative history does not reflect the legislature's intent to allow sentencing pursuant to HRS § 706–667 for the offense of Methamphetamine Trafficking in the Second Degree.

The offense of Unlawful Methamphetamine Trafficking, which preceded the offenses of Methamphetamine Trafficking in the First and Second Degrees, was enacted in 2004 to "address the devastating effects of crystal methamphetamine (commonly known as 'ice') abuse in Hawaii."[2] HRS § 712–1240.6 cmt. (Supp. 2004); 2004 Haw. Sess. Laws Act 44, § 3 at 207–08. The purpose of the original bill was to, inter alia, "impose large penalties for methamphetamine trafficking[.]" H. Stand. Comm. Rep. No. 495–04, in 2004 House Journal, at 1603. The House amended the original bill to "[s]pecify that other statutes relating to sentencing do not apply to the offense of methamphetamine trafficking[.]" *Id.* at 1604 (emphasis added). The bill that ultimately was enacted into law provided that "[a] defendant convicted of the offense of unlawful methamphetamine trafficking shall be sentenced in accordance with

this section, notwithstanding sections 706–620(2), 706–659, 706–640, and 706–641." 2004 Haw. Sess. Laws Act 44, § 3 at 207–08 (codified at HRS § 712–1240.6(4)).

In 2005, the legislature convened a committee to conduct a comprehensive review of the Hawai'i Penal Code and to recommend amendments to the code. 2005 Haw. Sess. Laws Act 125, § 2 at 328–29. In its report to the 2006 legislature, the committee noted that "ice" "is now the dominant issue in the criminal justice system." Hawai'i Judicial Council, *Report of the Committee to Conduct a Comprehensive Review of the Hawai'i Penal Code,* (Dec. 2005) (hereinafter "Report") at 5. To address this issue, the committee recommended repealing HRS § 712–1240.6, and replacing it with new sections that separated methamphetamine trafficking in the first and second degrees into separate offenses. *Id.* at 10. The committee recommended replacing definite minimum terms with minimum term ranges "to enhance the court's ability to tailor the minimum in accordance with the aggravating and mitigating circumstances of any particular trafficking case." *Id.* at 56. However, "[t]he applicable mandatory minimum range is to be determined exclusively by the number of the defendant's prior methamphetamine trafficking convictions[.]"[3] *Id.* at 11 (emphasis added).

The committee proposed legislation to effectuate these recommendations. *Id.* at 52–54. The committee's recommended prohibition against sentencing under other laws was similar to that contained in HRS § 712–1240.6, but the committee added the phrase, "any other law to the contrary." *Compare* HRS § 712–1240.6(4) *with* Report at 53. The legislature subsequently adopted the committee's proposal nearly verbatim. *Compare* Report at 53 *with* HRS § 712–1240.8(3).

The history of the methamphetamine trafficking laws from 2004 through 2006 indicates that the legislature intended to impose specific sentencing provisions for the offense of

---

2. Previously, offenses relating to methamphetamine trafficking were punishable pursuant to HRS §§ 712–1241 and 712–1242 (Supp.2002), Promoting a Dangerous Drug in the First or Second Degree.

3. This is contrary to the Young Adult Defendants statute, which allows the court to impose a special indeterminate term of imprisonment, in which the minimum length of imprisonment is set by the Hawaii Paroling Authority in accordance only with HRS § 706–669. HRS § 706–667(3).

Methamphetamine Trafficking in the Second Degree, to the exclusion of all contrary sentencing schemes, including HRS § 706–667. Specifically, the legislature made clear its intent in 2004 that "other statutes relating to sentencing do not apply[,]" H. Stand. Comm. Rep. No. 495–04, in 2004 House Journal, at 1604, and added the "any other law to the contrary" language in 2006,[4] 2006 Haw. Sess. Laws Act 230, § 4 at 999 (codified at HRS § 712–1240.8(3)).

It is true that the committee also recommended amendments to HRS § 706–667 in 2006, Report at 27q–27r, and that these amendments were adopted by the legislature, 2006 Haw. Sess. Laws Act 230, § 25 at 1013 (codified at HRS § 706–667 (Supp.2006)). However, these amendments do not indicate a broad legislative intent to expand the reach of the Young Adult Defendants statute to persons convicted under HRS § 712–1240.8. Rather, the amendments were directed at resolving a particular problem: under the former version of the statute, a defendant's eligibility for Young Adult Defendants sentencing turned on his or her age at the time of sentencing, rather than at the time of offense, resulting in inequities based on delays in scheduling trial or sentencing. Report at 27r; see also HRS § 706–667 (Supp. 1997). Respectfully, amending HRS § 706–667 to base eligibility on age at the time of the offense does not reflect a legislative intent to remove young adults from the provisions of HRS § 712–1240.8.

Finally, in this case, the sentencing court opined that courts should have greater discretion in the sentencing process than that afforded by HRS § 712–1240.8. "A sentencing judge generally has broad discretion in imposing a sentence." *State v. Pecpec*, 127

Hawai'i 20, 32, 276 P.3d 589, 601 (2012). However, "[a] cardinal canon of statutory interpretation is that this court cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts. This is because we do not legislate or make laws." *Smith*, 103 Hawai'i at 233, 81 P.3d at 413 (citations, brackets, and internal quotation marks omitted). Thus, it is not for this court to afford the sentencing court discretion that the legislature has so clearly curtailed.

Accordingly, I respectfully dissent.

**4.** Legislative action following this court's decision in *Dannenberg* indicates that the legislature is aware of the meaning of that phrase "notwithstanding any other law to the contrary," and is able to act accordingly. In *Dannenberg*, this court concluded that the phrase "[n]otwithstanding any other law to the contrary" removed the sentencing court's discretion to grant deferred acceptance of guilty pleas in prostitution cases. 74 Haw. at 80, 837 P.2d at 778. However, the legislature subsequently amended the prostitution statute to allow for deferred acceptance of guilty or no contest pleas in these cases by removing the "notwithstanding any other law to

the contrary" language. 2003 Haw. Sess. Laws Act 130, § 1 at 183 (codified at HRS § 712–1200(4) (1993)); see also State v. Hamili, 87 Hawai'i 102, 106 n. 5, 952 P.2d 390, 394 n. 5 (1998). Had the legislature intended to permit alternative sentencing schemes for the offense of Methamphetamine Trafficking in the Second Degree, it presumably would not have added this language to the statute in 2006. See State v. Reis, 115 Hawai'i 79, 97, 165 P.3d 980, 998 (2007) ("[W]e must presume that the legislature knows the law when enacting statutes[.]" (citation omitted)).