289 P.3d 1006

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Rubin Ikoa CASUGAY–BADIANG, Defendant–Appellee.**

**No. CAAP–11–0000802.**

Intermediate Court of Appeals of Hawai'i.

Aug. 21, 2012.

James M. Anderson, Deputy Prosecuting Attorney City and County of Honolulu, on the briefs, for Plaintiff–Appellant.

Summer M.M. Kupau, Deputy Public Defender, on the briefs, for Defendant–Appellee.

NAKAMURA, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

## I.

Plaintiff–Appellant State of Hawai'i (State) appeals from the Judgment of Conviction and Sentence entered October 5, 2011 in the Circuit Court of the First Circuit[1] (circuit court).

On April 18, 2011, Defendant–Appellee Rubin Ikoa Casugay–Badiang (Casugay–Ba-

1. The Honorable Glenn J. Kim presided.

2. HRS § 712–1240.8 provides:

§ 712–1240.8 **Methamphetamine trafficking in the second degree.**
(1) A person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount.
(2) Methamphetamine trafficking in the second degree is a class B felony for which the defendant shall be sentenced as provided in subsection (3).
(3) Notwithstanding sections 706–S20, 706–640, 706–641, 706–660, 706–669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000; provided that:

diang) was charged with two counts of Methamphetamine Trafficking in the Second Degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1240.8 (Supp.2011).[2]

On July 26, 2011, Casugay–Badiang pled guilty to both counts. The applicable penalty for each count was an indeterminate term of ten years of imprisonment, a mandatory minimum term of one to four years of imprisonment, and up to a $10,000,000 fine.

Sentencing was held on October 5, 2011. Defense counsel stated that he understood the sentences for Casugay–Badiang's offenses were mandatory, but asked the circuit court to exercise its discretion with respect to the mandatory minimum terms of imprisonment, and sentence Casugay–Badiang to one-year mandatory minimum terms of imprisonment. The State concurred with Casugay–Badiang's position that one-year mandatory minimum terms of imprisonment were appropriate, inasmuch as Casugay–Badiang had "a clean record, no other arrests[,]" and admitted to selling methamphetamine because he had a drug problem. Rather than sentencing Casugay–Badiang to a mandatory one-year imprisonment and maximum ten years of imprisonment pursuant to HRS § 712–1240.8, the circuit court sentenced Casugay–Badiang as a young adult offender to a maximum term of imprisonment of five years pursuant to HRS § 706–667 (Supp. 2011).[3] The court stated:

(a) If the person has one prior conviction for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be not less than three years, four months and not greater than six years, eight months;
(b) If the person has two prior convictions for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be not less than six years, eight months and not greater than ten years; or
(c) If the person has three or more prior convictions for methamphetamine trafficking pursuant to this section or section 712–1240.7, the mandatory minimum term of imprisonment shall be ten years.

3. HRS § 706–667 provides:

§ 706–667 **Young adult defendants.** (1) Defined. A young adult defendant is a person con-

Okay. Um, sometimes, Counsel, the court asks you to indulge the court whether you want to or not. Just by way of editorializing here, you, I look at this PSI, this young man was all of 19 years old when he committed these offenses and he only 20 now. He just turned 20 several months ago.

He has absolutely no record. He has no juvie record. He has no adult record. Now he's young, but he has no record, no arrests, nothing, except for this.

And I understand why the legislature did what they did in 2006. They're a political body, and, you know, there's no question that ice was really and still is a scourge on this community. And there were TV reports and lots of media and, you, so they reacted like politicians do.

And I'm not faulting them. But you know, I look at this PSI and I look at this young man and then I look at the fact that they took away all discretion from the court, you know, and they mandated an open ten and a mandatory minimum and a fine and all of this.

And again I say I understand it, but I don't think it's right. Uh, I think that's what the courts are for. I think that's why we should have some discretion, more discretion than they gave us here.

I want to note that the statute at issue here, 712–1240.8 in the sentencing section which is Sub 3 it says this, the plain language, it says "Notwithstanding Sections 706–620, 706–640, 706–641, 706–660, and 706–669." Notwithstanding those specific sections. And then it does throw in this,

"And any other law to the contrary, a person convicted shall be sentenced to the open ten," et cetera, et cetera. But they specifically mention these one, two, three, four, five subsections of the sentencing Chapter 706.

And if you go back and look as I have, it's the probation section, et cetera, et cetera. All right. Because normally a sentence like this-and until they pass it, 712–124[0].8 would have been probationable. But they specifically say "notwithstanding those sections" in effect taking away the court's discretion. I would note, however, that one section which is not mentioned specifically as one of those five sections is 706–667. They don't say notwithstanding 706–667.

Now they do, like I say, throw in that "and any other law to the contrary," but in my view, which are well-settled principles of statutory construction, when they mention five particular subsections in Chapter 706 and don't mention one, 706–667, I take that as then still keeping 706–667 in play.

I'm going to sentence Mr. Casugay-Badiang pursuant to 706–667. I'm going to find that he was less than 22 years of age at the time of the offense[s]. That's undisputed. I'm going to find that he's not been previously convicted of a felony as an adult or adjudicated as a juvenile for an offense that would have constituted a felony. I'm going to find that a special term under 706–667 is adequate for this young adult defendant's correction and rehabilitation

victed of a crime who, at the time of the offense, is less than twenty-two years of age and who has not been previously convicted of a felony as an adult or adjudicated as a juvenile for an offense that would have constituted a felony had the young adult defendant been an adult.

(2) Specialized correctional treatment. A young adult defendant who is sentenced to a term of imprisonment exceeding thirty days may be committed by the court to the custody of the department of public safety and shall receive, as far as practicable, such special and individualized correctional and rehabilitative treatment as may be appropriate to the young adult defendant's needs.

(3) Special term. A young adult defendant convicted of a felony, in lieu of any other sentence of imprisonment authorized by this chap-

ter, may be sentenced to a special indeterminate term of imprisonment if the court is of the opinion that such special term is adequate for the young adult defendant's correction and rehabilitation and will not jeopardize the protection of the public. When ordering a special indeterminate term of imprisonment, the court shall impose the maximum length of imprisonment, which shall be eight years for a class A felony, five years for a class B felony, and four years for a class C felony. The minimum length of imprisonment shall be set by the Hawai'i paroling authority in accordance with section 706–669. During this special indeterminate term, the young adult shall be incarcerated separately from career criminals, when practicable.

This section shall not apply to the offenses of murder or attempted murder.

and will not jeopardize the protection of the public.

The long and short of it is I'm going to sentence him as a young adult defendant in this case. And I suppose if the prosecutors feel [ ] strongly enough about this, they'll writ me and then we'll see. Okay. If [t]he supreme court says I can't do it, fine. Obviously I will bow to my superiors on the supreme court. But until they do, that's my, uh, that's my analysis of these sections and their interplay.

So Mr. Casugay–Badiang is going to be committed to the custody of the Director of the Department of Public Safety for an open five as a young adult defendant, concurrent, mandatory minimum one year. I have no discretion there I don't believe. He has to pay a fine—that's mandatory—up to ten million dollars. The fine's going to be one dollar. He is going to provide buccal swab samples and print impressions of each hand and, if required by the collecting agency's rules or internal regulations, blood specimens required for law enforcement identification analysis.

He will pay a monetary assessment of $500 or the actual cost of DNA analysis, whichever is less, to the DNA Registry Special Fund. Uh, he will pay a Crime Victim Compensation Fee of $205, a Drug Demand Reduction Assessment fee of $205. He will get credit for time served. The mitt will be forthwith.

On October 6, 2011, the State filed its "Motion to Correct Illegal Sentence." The State maintained that Casugay–Badiang's sentence under HRS § 706–667 was contrary to HRS § 712–1240.8(3), and asked that the circuit court correct the illegal sentence imposed upon Casugay–Badiang.

On October 17, 2011, the circuit court denied the State's motion and on November 3, 2011, the State filed a timely notice of appeal.

**II.**

On appeal, the State contends the circuit court abused its discretion in sentencing Ca-

sugay–Badiang to five years imprisonment under HRS § 706–667 as a young adult defendant as opposed to sentencing him under HRS § 712–1240.8(3).

**III.**

HRS § 712–1240.8(3) provides:

(3) *Notwithstanding* sections 706–620, 706–640, 706–641, 706–660, 706–669 and *any other law to the contrary,* a person convicted of methamphetamine trafficking in the second degree *shall be sentenced* to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one-year and not greater than four years and a fine not to exceed $10,000,000[.]

(Emphasis added.) HRS § 712–1240.8 clearly precludes the applicability of sentencing as a young adult defendant under HRS § 706–667 for cases involving methamphetamine trafficking in the second degree because HRS § 706–667 is contrary to HRS § 712–1240.8. The legislature intended to divest the circuit court of its discretion to sentence Casugay–Badiang under any sentencing statute other than HRS § 712–1240.8(3). *State v. Dannenberg,* 74 Haw. 75, 80–81, 837 P.2d 776, 778–79 (1992) (the language "notwithstanding any law to the contrary" in the prostitution statute "clearly [limited] the discretion of the trial court in sentencing prostitution offenses and to provide a mandatory sentencing structure unlike that for other petty misdemeanors."). In the instant case, the circuit court acknowledged that the plain language of HRS § 712–1240.8(3) appeared to impose limits on its discretion. The circuit court stated:

I look at the fact that they took away all discretion from the court, you know, and they mandated an open ten and a mandatory minimum and a fine and all of this.

And again I say I understand it, but I don't think it's right. Uh, I think that's what the courts are for. I think that's why we should have some discretion, more discretion than they gave us here."

The circuit court erred in disregarding the plain language of HRS § 712–1240.8(3) and sentencing Casugay–Badiang as a young adult offender pursuant to HRS § 706–667. *State v. Gaylord,* 78 Hawai'i 127, 144, 890 P.2d, 1167, 1184 (1995). The Hawai'i Supreme Court has repeatedly stated that, when interpreting a statute, an appellate court's

> foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, [a court's] only duty is to give effect to [the statute's] plain and obvious meaning.

*State v. Wells,* 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (internal quotation marks, citations, and brackets in original omitted).

The legislative history of HRS § 712–1240.8 is not inconsistent with the statute's plain language.

In 2004, the legislature stated that it enacted HRS § 712–1240.6 (the predecessor to HRS § 712–1240.8) "to address the devastating effects of crystal methamphetamine (commonly known as ice) abuse in Hawai'i[,]" and to "[i]ncrease mandatory minimum sentences and impose large penalties for methamphetamine trafficking[.]" H. Stand. Comm. Rep. No. 495–04, in 2004 House Journal, at 1603. The legislature amended the offenses of promoting dangerous drugs in the first, second, and third degrees by "eliminat[ing] the manufacturing and distribution of methamphetamine elements which are incorporated in the new offense of methamphetamine trafficking. The mandatory minimum sentences for methamphetamine trafficking are deleted because of the creation of the new offense[.]" *Id.* The legisla-

ture stated that its intent was to "*[s]pecify that other statutes relating to sentencing do not apply to the offense of methamphetamine trafficking*[.]" *Id.* at 1604 (emphasis added). The legislature expressed this intent by providing in HRS § 712–1240.6(4) (Supp.2005) that "[a] defendant convicted of the offense of unlawful methamphetamine trafficking shall be sentenced in accordance with this section, notwithstanding sections 706–620(2), 706–659, 706–640, and 706–641."

In 2006, the legislature made it even clearer that no other sentencing statutes applied to the offenses of methamphetamine trafficking in the first and second degrees. The legislature provided language in HRS § 712–1240.7(3) (Supp.2011) and HRS § 712–1240.8(3) that "[n]otwithstinding sections ... *and any other law to the contrary,* a person convicted of methamphetamine trafficking in the [first and second degrees] *shall be sentenced to ....*" (emphasis added); *see* 2006 Haw. Sess. Laws Act 230, § 4 at 998–99.

## IV.

Therefore, the Judgment of Conviction and Sentence entered October 5, 2011 in the Circuit Court of the First Circuit is vacated, and this case is remanded to the circuit court for sentencing pursuant to HRS § 712–1240.8.