Electronically Filed
Supreme Court
SCWC-11-0000802
28-JUN-2013
10:13 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellant,

vs.

RUBIN IKOA CASUGAY-BADIANG, Petitioner/Defendant-Appellee.
_____

SCWC-11-0000802

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000802; CR. NO. 11-1-0523)

June 28, 2013

ACOBA, MCKENNA, AND POLLACK, JJ.,
WITH RECKTENWALD, C.J., DISSENTING SEPARATELY,
WITH WHOM NAKAYAMA, J., JOINS

AMENDED OPINION OF THE COURT BY MCKENNA, J.

## I.  Introduction

The sole issue before this court is whether a sentencing court has the discretion to sentence a defendant convicted of violating Hawaiʻi Revised Statutes ("HRS") § 712-1240.8 (1993 &

Supp. 2006) (Methamphetamine Trafficking in the Second Degree)[1]

under HRS § 706-667 (1993 & Supp. 2006) (the "Young Adult

Defendants" statute).[2]  Specifically, the issue is whether the

---

[1]     That statute currently states, as it did at the time of the alleged offense, the following:

> (1) A person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount.
> (2) Methamphetamine trafficking in the second degree is a class B felony for which the defendant shall be sentenced as provided in subsection (3).
> (3) Notwithstanding sections 706-620, 706-640, 706-641, 706-660, 706-669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000; provided that:
> (a)   If the person has one prior conviction for methamphetamine trafficking pursuant to this section or section 712-1240.7, the mandatory minimum term of imprisonment shall be not less than three years, four months and not greater than six years, eight months;
> (b)   If the person has two prior convictions for methamphetamine trafficking pursuant to this section or section 712-1240.7, the mandatory minimum term of imprisonment shall be not less than six years, eight months and not greater than ten years; or
> (c)   If the person has three or more prior convictions for methamphetamine trafficking pursuant to this section or section 712-1240.7, the mandatory minimum term of imprisonment shall be ten years.

[2]     That statute currently states, as it did at the time of the alleged offense, the following:

> (1) Defined.  A young adult defendant is a person convicted of a crime who, at the time of the offense, is less than twenty-two years of age and who has not been previously convicted of a felony as an adult or adjudicated as a juvenile for an offense that would have constituted a felony had the young adult defendant been an adult.
> (2) Specialized correctional treatment. A young adult defendant who is sentenced to a term of imprisonment exceeding thirty days may be committed by the court to the custody of the department of public safety and shall receive, as far as practicable, such special and individualized correctional and rehabilitative treatment as may be appropriate to the young adult defendant's needs.
> (3) Special term. A young adult defendant convicted of a felony, in lieu of any other sentence of imprisonment authorized by this chapter, may be sentenced to a special

phrase "Notwithstanding sections 706-620, 706-640, 706-641, 706-660, 706-669, and any other law to the contrary," found in the sentencing provision of HRS § 712-1240.8, overrides sentencing under HRS § 706-667 as "contrary." We hold that it does not. Therefore, we reverse the ICA's Judgment on Appeal, and affirm the circuit court's Judgment of Conviction and Sentence and Order Denying Motion to Correct Illegal Sentence.

## II. Background

Petitioner/Defendant-Appellee Rubin Ikoa Casugay-Badiang ("Casugay-Badiang") pled guilty to two counts of Methamphetamine Trafficking in the Second Degree, in violation of HRS § 712-1240.8. At Casugay-Badiang's sentencing hearing, both the prosecution and defense requested a minimum sentence of one year in prison, presumably under HRS § 712-1240.8(3), because Casugay-Badiang had no prior criminal record.

---

indeterminate term of imprisonment if the court is of the opinion that such special term is adequate for the young adult defendant's correction and rehabilitation and will not jeopardize the protection of the public. When ordering a special indeterminate term of imprisonment, the court shall impose the maximum length of imprisonment, which shall be eight years for a class A felony, five years for a class B felony, and four years for a class C felony. The minimum length of imprisonment shall be set by the Hawaii paroling authority in accordance with section 706-669. During this special indeterminate term, the young adult shall be incarcerated separately from career criminals, when practicable.

This section shall not apply to the offenses of murder or attempted murder.

The circuit court,[3] on the other hand, sua sponte raised the issue of whether it possessed the discretion to sentence Casugay-Badiang under HRS § 706-667.  The circuit court reasoned that it did retain such discretion because HRS § 712-1240.8(3) expressly excluded sentencing under HRS §§ 706-620, -640, -641, -660, and -669, but HRS § 706-667 was not among that list.  The circuit court recognized that HRS § 712-1240.8(3) included an additional phrase "and any other law to the contrary," following the five enumerated statutes.  To the circuit court, however, the fact that HRS § 706-667 was not among the enumerated statutes "still ke[pt HRS §] 706-667 in play."  The circuit court then sentenced Casugay-Badiang to a "concurrent term of imprisonment of five (5) years in Counts I and II, as a young adult defendant (pursuant to §706-667, H.R.S.), with a mandatory minimum of one (1) year."

The State then filed its Motion to Correct Illegal Sentence, in which it argued that the circuit court's decision to sentence Casugay-Badiang under HRS § 706-667 "runs contrary to the law imposing sentence upon offenders under HRS § 712-1240.8."  At a hearing on the motion, the State rested on its briefing, but defense counsel argued that (1) if the legislature intended for HRS § 712-1240.8(3) to override HRS § 706-667, then it would have included HRS § 706-667 among the five enumerated statutes in HRS

---

[3]     The Honorable Glenn J. Kim presided.

4

§ 712-1240.8(3); and (2) if the legislature intended HRS § 706-667 not to apply to methamphetamine trafficking, then it would have amended that statute to include that offense along with murder and attempted murder in HRS § 706-667(3).

The circuit court added that it believed that it could still sentence Casugay-Badiang under HRS § 706-667 because that statute "mitigated," but was not "contrary" to, the sentencing scheme set forth in HRS § 712-1240.8(3). The circuit court issued an Order Denying Motion to Correct Illegal Sentence. The State timely appealed the circuit court's Judgment of Conviction and Sentence and its Order Denying Motion to Correct Illegal Sentence.

Before the ICA, the State argued the following:

> The circuit court abused its discretion in sentencing [Casugay-Badiang] to five years imprisonment under HRS § 706-667 as a young adult defendant, where HRS § 712-1240.8(3) provides: Notwithstanding sections 706-620, 706-640, 706-641, 706-660, 706-669, **and** any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000[.]

(Emphasis in original). The State essentially argued that the plain language of HRS § 712-1240.8(3) mandated sentencing under that statute. In support of its interpretation, the State pointed out that the phrase "notwithstanding any other law to the contrary" in a sentencing provision has previously been construed by this court, in State v. Dannenberg, 74 Haw. 75, 837 P.2d 776

5

(1992), as limiting the discretion of the trial court to take into account any other statutory sentencing scheme. The State further argued that HRS § 706-667 is "contrary" to HRS § 712-1240.8(3), because a five-year indeterminate term under HRS § 706-667 is "completely different" from a ten-year indeterminate term under HRS § 712-1240.8(3).

The ICA agreed with the State. It vacated the circuit court's Judgment of Conviction and Sentence and remanded this case for re-sentencing under HRS § 712-1240.8. See State v. Casugay-Badiang, 128 Hawaiʻi 370, 374, 289 P.3d 1006, 1010 (2012). It held:

> HRS § 712-1240.8 clearly precludes the applicability of sentencing as a young adult defendant under HRS §706-667 for cases involving methamphetamine trafficking in the second degree because HRS § 706-667 is contrary to HRS § 712-1240.8. The legislature intended to divest the circuit court of its discretion to sentence Casugay-Badiang under any sentencing statute other than HRS § 712-1240.8(3).

128 Hawaiʻi at 373, 289 P.3d at 1009. The ICA concluded that the circuit court "erred in disregarding the plain language of HRS § 712-1240.8. . . ." 128 Hawaiʻi at 374, 289 P.3d at 1010.

## III. Discussion

On certiorari, Casugay-Badiang argues that the "ICA's Opinion simply concludes that 'HRS § 706-667 is contrary to HRS § 712-1240.8' without undertaking a thorough analysis of the construction of both statutes." We now take a closer look at both statutes.

6

## A.    HRS § 712-1240.8

HRS § 712-1240.8 provides:

> **Methamphetamine trafficking in the second degree.** (1)  A person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount.
>     (2) Methamphetamine trafficking in the second degree is a class B felony for which the defendant shall be sentenced as provided in subsection (3).
>     (3) Notwithstanding sections 706-620, 706-640, 706-641, 706-660, 706-669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000; provided that:
> (a)  If the person has one prior conviction for methamphetamine trafficking pursuant to this section or section 712-1240.7, the mandatory minimum term of imprisonment shall be not less than three years, four months and not greater than six years, eight months;
> (b)  If the person has two prior convictions for methamphetamine trafficking pursuant to this section or section 712-1240.7, the mandatory minimum term of imprisonment shall be not less than six years, eight months and not greater than ten years; or
> (c)  If the person has three or more prior convictions for methamphetamine trafficking pursuant to this section or section 712-1240.7, the mandatory minimum term of imprisonment shall be ten years.

At issue in this case is whether the circuit court had the discretion to sentence Casugay-Badiang to a special five-year indeterminate term of imprisonment under HRS § 706-667 in the face of the following language from HRS § 712-1240.8(3):

> Notwithstanding sections 706-620, 706-640, 706-641, 706-660, 706-669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000[.]

7

This court's foremost obligation in construing a statute is "to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself."  State v. Valdivia, 95 Hawaiʻi 465, 472, 24 P.3d 661, 668 (2001)(citation omitted).  "Where the statutory language is unambiguous, the court's sole duty is to give effect to its plain and obvious meaning."  State v. Sakamoto, 101 Hawaiʻi 409, 412, 70 P.3d 635, 638 (2003)(citations omitted).

### 1.  A Plain Language Reading of HRS § 712-1240.8(3) in Favor of the State

This court previously interpreted the statutory phrase "notwithstanding any other law to the contrary" as removing a circuit court's discretion to sentence under any other law.  An early case interpreting the phrase "any other law to the contrary" was State v. Rice, 66 Haw. 101, 657 P.2d 1026 (1983).  In the context of whether the prostitution statute allowed for deferred acceptance of guilty pleas, this court concisely held, "[W]e think that § 853-1, HRS, is 'any other law to the contrary' and that the court below therefore correctly construed § 712-1200(4) as taking away its power to grant deferred acceptance of guilty pleas in prostitution cases."  66 Haw. at 102, 657 P.2d at 1026.

8

In Dannenberg, this court once again held that the trial court abused its discretion in granting a defendant's motion for a DANC plea to a charge of prostitution under HRS § 712-1200, which, at that time, provided in relevant part:

> Notwithstanding any other law to the contrary, a person convicted of committing the offense of prostitution shall be sentenced as follows:  [for the first offense, a fine or community service and/or a prison term of not more than 30 days; for a subsequent offense, a fine and a prison term of 30 days, without possibility of suspension of sentence or probation.]

74 Haw. at 77, 79-80, 837 P.2d at 777, 778.  The Dannenberg court reaffirmed Rice and clarified its reasoning in that case as follows:

> As Defendant points out, HRS § 712-1200 is ambiguous as to whether the 'notwithstanding any other law to the contrary' refers to HRS ch. 853 (1985 & Supp. 1991) which is the statutory authority for permitting discretionary deferred acceptance of guilty pleas and deferred acceptance of nolo contendere pleas.  Defendant's argument that the sentencing provisions of HRS § 712-1200 only apply where defendant is actually 'convicted' and that a DANC is not a conviction is well-taken.  However, to permit a trial court to defer the entry of a plea in order to avoid a conviction permits the court to avoid the sentencing scheme created by the legislature specifically for prostitution cases and is therefore repugnant to the legislative intent in enacting the prostitution law.

74 Haw. at 80, 837 P.2d at 778-79.  This court then turned to the legislative history of the prostitution statute, which revealed that "[t]he intent was clearly to limit the discretion of the trial court in sentencing prostitution offenses and to provide a mandatory sentencing structure unlike that for other petty misdemeanors."  74 Haw. at 81, 837 P.2d at 779.  Thus, this court held that DANC's were not available for prostitution charges,

9

"[s]ince it is clear that the language of the statute anticipates mandatory sentencing for prostitution offenders, and the legislative history reveals an intent to remove judicial discretion from sentencing[.]"  74 Haw. at 83, 837 P.2d at 779-80.[4]   Thus, under Dannenberg, HRS § 712-1240.8(3)'s "notwithstanding any other law to the contrary" phrase indicates that the circuit court lacked the discretion to sentence Casugay-Badiang under any other sentencing scheme not found in HRS § 712-1240.8(3), which would include HRS § 706-667.

Numerous cases since Dannenberg interpreted the phrase "notwithstanding any other law to the contrary."  In State v. Smith, 103 Hawaiʻi 228, 234, 81 P.3d 408, 414 (2003), we synthesized these cases and held that the interpretation of the phrase "notwithstanding any other law to the contrary" has been, since Rice, a plain-language interpretation divesting the sentencing court of discretion to sentence under any other scheme:

> [T]his court has repeatedly employed a plain-language analysis in interpreting statutes that contain the phrase, 'notwithstanding any other law to the contrary. . . .'  See State v. Hamili, 87 Hawaiʻi 102, 105, 952 P.2d 390, 393 (1998)(reaffirming this court's holding in State v. Rice, infra); State v. Dannenberg, 74 Haw. 75, 80, 837 P.2d 776, 778 (1992)(reaffirming this court's holding in Rice, infra); State v. Mun Chung Tom, 69 Haw. 602, 604, 752 P.2d 597, 598 (1988)(analogizing the language of the driving under the influence (DUI) statute to the wording of the prostitution

---

[4]   Dannenberg was later superseded by statute.  The prostitution statute was later amended to expressly allow for probation, and, therefore, DANC pleas.  See State v. Klie, 116 Hawaiʻi 519, 523, 174 P.3d 358, 362 (2007).

10

statute, infra, and noting that "the language of the DUI statute [(i.e., a person convicted 'shall be sentenced as follows without possibility of probation')] is sufficiently clear in mandating the sentence to be imposed"); State v. Rice, 66 Haw. 101, 657 P.2d 1026 (1983) (holding that, where the prostitution statute provides "notwithstanding any other law to the contrary, a person convicted of committing the offense of prostitution shall be sentenced as follows[,]" the phrase "'any other law to the contrary' . . . takes away [the trial court's] power to grant deferred acceptance of guilty pleas in prostitution cases").

See also State v. Kamanao, 118 Hawaiʻi 210, 218, 188 P.3d 724, 732 (2008)("The express language of HRS § 706-606.5, '[n]othwithstanding . . . any other law to the contrary . . . [,] 'clearly limits the applicability of HRS § 706-668 in cases involving the '[s]entencing of repeat offenders.' HRS § 706-668 is precisely the type of 'law to the contrary' described in HRS § 706-606.5.")

Moreover, within the phrase "notwithstanding any other law to the contrary," a plain language, dictionary definition of "contrary" is "being opposite to or in conflict with each other[.]" Merriam Webster's Collegiate Dictionary 765 (10th Ed. 1989)(cited in State v. Schnabel, 127 Hawaiʻi 432, 448, 279 P.3d 1237, 1253 (2012)). "'[T]wo statutes conflict' where '[i]t is not possible to give effect to both[.]" Id. (citing State v. Richie, 88 Hawaiʻi 19, 35, 960 P.2d 1227, 1243 (1998)). In Casugay-Badiang's case, HRS § 706-667 is seemingly contrary to HRS § 712-1240.8(3) because "[i]t is not possible to give effect to both" an indeterminate five-year term of imprisonment under

11

the former statute and an indeterminate ten-year term of imprisonment under the latter.  Under Richie, then, and in contrast to the circuit court's reasoning, a sentence under HRS § 706-667 is not just "mitigating" in relation to HRS § 712-1240.8(3); it is contrary to HRS § 712-1240.8(3).  Thus, under Richie, HRS § 706-667 would appear to be included in HRS § 712-1240.8(3)'s phrase "notwithstanding . . . any other law to the contrary[.]"

### 2.  A Plain Language Reading of HRS § 712-1240.8(3) in Favor of Casugay-Badiang

On the other hand, HRS § 706-667 is not included among the five enumerated statutes in HRS § 712-1240.8(3)'s "notwithstanding" clause, evidencing no express legislative intent to exclude it as a sentencing alternative.  This court previously decided a case in which HRS § 706-667 was considered to be a "sentencing alternative" in the face of a sentencing statute that excluded "any other law to the contrary."  In State v. Lau, 73 Haw. 259, 831 P.2d 523 (1992), a case decided four months before Dannenberg, the defendant ("Lau") was sentenced to an indeterminate twenty-year term of imprisonment following a class A felony drug conviction for cocaine trafficking.  73 Haw. at 260-61, 831 P.2d at 524.

On appeal, he argued that "the sentencing court committed reversible error by not stating its reasons for imposing a twenty

12

year sentence . . . [and that] it is unknown if the court considered the alternative eight year sentence under the young adult defendants statute for which he was qualified." 73 Haw. at 260-61, 831 P.2d at 523-24. This court held:

> Our review of the record reveals that the sentencing court had the benefit of a pre-sentence report, the arguments of counsel, which included references to both the ordinary twenty year term and the special indeterminate term of eight years, and appellant's personal statement. Thus, we can reasonably infer that the court did consider the sentencing alternatives, and we therefore affirm.

73 Haw. at 260, 831 P.2d at 524.

This was so, even though at the time <u>Lau</u> was decided, HRS § 706-659 (1985) provided, "<u>Notwithstanding</u> . . . <u>any other law to the contrary</u>, a person who has been convicted of a class A felony shall be sentenced to an indeterminate term of imprisonment of twenty years without possibility of suspension of sentence or probation." (emphasis added). This court stated that the sentencing court could sentence Lau under HRS § 706-667, without discussing HRS § 706-659's express "notwithstanding any other law to the contrary" language, which is similar to HRS § 712-1240.8(3)'s "notwithstanding" language. 73 Haw. at 260, 831 P.2d at 524. In fact, we stated, "Once the court determines that imprisonment is necessary, the court 'is free . . . to choose' between the ordinary term or the special indeterminate sentence under the young adult defendants statute." 73 Haw. at 263, 831 P.2d at 525 (citing HRS § 706-667 commentary). Therefore, <u>Lau</u> is

13

in tension with Dannenberg, as well as Rice, which existed at the time Lau was decided.

The legislature amended HRS § 706-659 twice since Lau was decided, with neither amendment expressly eliminating HRS § 706-667 as a sentencing alternative, where applicable.[5] See 1994 Haw. Sess. Laws Act 229, § 3 at 558; 2012 Haw. Sess. Laws Act 292, § 4 at 993. Lau's interpretation of HRS § 706-659 to allow for sentencing under HRS § 706-667 appears to have been untouched by the legislature, which is "'presumed [to] know the law when enacting statutes, 'including this court's interpretations of statutory language." State v. Reis, 115 Hawaiʻi 79, 97, 165 P.3d 980, 998 (2007); Terr. v. Ota, 36 Haw. 80, 98-99 (1942)("While . . . legislative inaction does not amount to legislative construction, it does indicate a lack of active disagreement with [judicial interpretation]. . . [L]egislative inaction tends to indicate agreement.")

In addition, even if HRS § 706-667 is "contrary" to HRS § 712-1240.8(3)'s sentencing scheme, the following rules of statutory interpretation would favor Casugay-Badiang's position:

---

[5]     Also of note, the legislature included the "notwithstanding" clause when it enacted HRS § 706-659 in 1980. 1980 Haw. Sess. Laws Act 293, § 1 at 562-63. HRS § 706-667 existed at that time, having been enacted in 1972. See 1972 Haw. Sess. Laws Act 9, § 1 at 81-82. HRS § 706-667 was not included among the other statutes in the "notwithstanding clause" of HRS § 706-659. 1980 Haw. Sess. Laws Act 293, § 1 at 562-63. Also in 1980, the legislature amended HRS § 706-667 but did not reference or exclude HRS § 706-659 from HRS § 706-667. 1980 Haw. Sess. Laws Act 295, §§ 2, 3 at 563. Therefore, young adult defendant sentencing appears to be generally available for class A felony convictions, and has been since the time HRS § 706-659 was enacted.

14

> First, legislative enactments are presumptively valid and "should be interpreted [in such a manner as] to give them effect." Second, "laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called in aid to explain what is doubtful in another."  Third, "where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored.  However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored."

Richardson v. City & County of Honolulu, 76 Haw. 46, 54-55, 868 P.2d 1193, 1201-02 (1994)(citations omitted).

This court has already considered HRS § 706-667 to be a specific statute, "involv[ing] specialized treatment for a limited group of defendants," as compared to other statutes that refer to "any sentence."  State v. Putnam, 93 Hawaiʻi 362, 371, 3 P.3d 1239, 1248 (2000).  Thus, in comparing statutes concerning the subject matter of sentencing, Putnam observed that "HRS § 706-667 is to be favored and would control," were the defendant in that case age-eligible for young adult defendant sentencing, which she was not.  Id.

**B.  HRS § 706-667**

We now turn to an examination of HRS § 706-667, which provides:

> **Young adult defendants.** (1) Defined.  A young adult defendant is a person convicted of a crime who, at the time of the offense, is less than twenty-two years of age and who has not been previously convicted of a felony as an adult or adjudicated as a juvenile for an offense that would have constituted a felony had the young adult defendant been an adult.
>      (2) Specialized correctional treatment. A young adult defendant who is sentenced to a term of imprisonment

15

exceeding thirty days may be committed by the court to the custody of the department of public safety and shall receive, as far as practicable, such special and individualized correctional and rehabilitative treatment as may be appropriate to the young adult defendant's needs.

(3) Special term. A young adult defendant convicted of a felony, in lieu of any other sentence of imprisonment authorized by this chapter, may be sentenced to a special indeterminate term of imprisonment if the court is of the opinion that such special term is adequate for the young adult defendant's correction and rehabilitation and will not jeopardize the protection of the public. When ordering a special indeterminate term of imprisonment, the court shall impose the maximum length of imprisonment, which shall be eight years for a class A felony, five years for a class B felony, and four years for a class C felony. The minimum length of imprisonment shall be set by the Hawaii paroling authority in accordance with section 706-669. During this special indeterminate term, the young adult shall be incarcerated separately from career criminals, when practicable.

This section shall not apply to the offenses of murder or attempted murder.

### 1. A Plain Language Reading of HRS § 706-667 in Favor of the State

In the face of HRS § 712-1240.8(3)'s "notwithstanding . . . any other law to the contrary" language, the permissive "may be sentenced" in HRS § 706-667 seemingly lacks the force necessary to demonstrate that sentencing under HRS § 706-667 overrides sentencing under HRS § 712-1240.8(3). When HRS §§ 706-667 and 712-1240.8(3) are read together, the "notwithstanding . . . any other law to the contrary" language indicates that a special five-year indeterminate term of imprisonment under HRS § 706-667 is contrary to a ten-year indeterminate term of imprisonment under HRS § 712-1240.8(3).

As the United States Supreme Court has observed, "[I]n construing statutes, the use of such a 'notwithstanding' clause

16

clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.  Likewise, the Courts of Appeals generally have 'interpreted similar "notwithstanding" language . . . to supersede all other laws, stating that "[a] clearer statement is difficult to imagine."'"  Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18, (1993)(citations omitted).

### 2. A Plain Language Reading of HRS § 706-667 in Favor of Casugay-Badiang

On the other hand, the plain language of HRS § 706-667 also states, "A young adult defendant convicted of a felony, in lieu of any other sentence of imprisonment authorized by this chapter, may be sentenced to a special indeterminate term of imprisonment."  All sentences for all offenses are governed by "this chapter," meaning Chapter 706.[6]  See HRS § 706-600 (1993)("No sentence shall be imposed otherwise than in accordance with this chapter."); HRS § 706-660 cmt. (1993)("This section establishes that dispositions for all offenses – whether defined within or outside the Penal Code – are to be imposed in accordance with this chapter and . . . 'the only dispositions authorized are those permitted by the Code.'").

In addition, facially, the only limit on the application of

---

[6]    We therefore reject the State's argument that HRS § 706-667 does not apply to HRS § 712-1240.8 simply because HRS § 712-1240.8 is not found within Chapter 706.

17

HRS § 706-667 as a sentencing option appears in subsection (3): "This section shall not apply to the offenses of murder and attempted murder." Methamphetamine Trafficking in the Second Degree is not included among these offenses.

This court previously construed the limitation found in subsection (3) in favor of young adult defendants. In State v. Pacariem, 67 Haw. 46, 47, 677 P.2d 463, 464 (1984), we faced the issue of whether young adult defendant sentencing was available following a conviction for attempted murder. At the time, HRS § 706-667 expressly stated that murder was the only offense for which young adult defendant sentencing was unavailable. 67 Haw. at 47 n.1, 677 P.2d 463 n.1.

The State appealed the defendant's young adult defendant sentence, arguing that the sentencing court should have sentenced the defendant under the more recently passed HRS § 707-660.1, which mandated a sentence of life imprisonment (with or without parole, depending upon the circumstances of the attempted murder). 67 Haw. at 47-48, 677 P.2d at 464. The State argued that the legislature intended to repeal HRS § 706-667 by implication, as to sentencing for the offense of attempted murder, as evidenced in the Commentary to HRS § 707-660.1, which stated that the "sentences for attempted murder . . . would be similar to those provided for murder," because "in either offense

18

the intent to kill was the same."  67 Haw. at 47 n.2, 48, 677 P.2d at 463 n.2, 464.  The State argued that, when a general and specific statute pertain to the same subject matter, the specific statute (which it argued was HRS § 707-660.1) should supersede and be deemed an exception to the general statute (which it argued was HRS § 706-667).  Id.

We rejected the State's argument, noting that that rule of statutory construction was "qualified by the proviso that the conflict between the general and specific statutes in question be 'plainly irreconcilable.'"  Id. (citation omitted).  Further, we held:

> H.R.S. § 706-667 specifically provides that it is not applicable to the offense of murder.  It also provides that the sentencing court has the discretion to apply H.R.S. § 706-667 ". . . in lieu of any other sentence of imprisonment authorized by this chapter."  These two provisions of H.R.S. § 706-667 are not plainly irreconcilable with H.R.S. § 706-660.1, but rather invest the sentencing court with discretion to apply H.R.S. § 706-667 to a young adult defendant, as long as the offense in question is not murder.

67 Haw. at 48, 677 P.2d at 464-65.  We then held that repeals by implication are disfavored, and "that if effect can reasonably be given to two statutes, it is proper to presume that the earlier statute is intended to remain in force and that the later statute did not repeal it."  Id.

Similarly, in the instant appeal, the State's argument that HRS § 706-667 sentencing is no longer available under HRS § 712-1240.8 could be construed as an argument that HRS § 712-1240.8

19

repealed, by implication, young adult defendant sentencing as to the offense of Methamphetamine Trafficking in the Second Degree. Following the logic of Pacariem, however, it can be argued that the sentencing court remained invested with discretion to sentence Casugay-Badiang under HRS § 706-667 in lieu of any other sentence of imprisonment, specifically the sentence set forth under HRS § 712-1240.8 for Methamphetamine Trafficking in the Second Degree, as the only offenses for which young adult sentencing are not available remain murder and attempted murder. Therefore, HRS § 712-1240.8, even with its "notwithstanding" language, did not repeal by implication the sentencing alternative available under HRS § 706-667.[7]

## C. Legislative History of Act 230 of 2006

In light of these two competing and equally viable plain language readings of HRS §§ 712-1240.8 and 706-667, legislative history may be a helpful aid in understanding whether HRS § 712-1240.8 overrides HRS § 706-667, or whether HRS § 706-667 remains a sentencing alternative. The legislature addressed both

---

[7]    In 1986, the legislature amended HRS § 706-667 to expressly include attempted murder as an offense for which young adult sentencing is not available. 1986 Haw. Sess. Laws Act 314, § 44 at 614. Although the legislature did not discuss Pacariem, it can be surmised that the amendment was made in response to Pacariem. See Ota, 36 Haw. at 98-99 ("It is a common practice of legislative bodies to enact laws to circumvent judicial constructions deemed by the legislators to be contrary to the true meaning of the statute construed.").

20

statutes in the same Act.  See 2006 Haw. Sess. Laws Act 230, at 996-1025.  Therefore, the actions the legislature took (or did not take) in clarifying the relationship between these two statutes in Act 230 is worth examining.

Act 230 enacted HRS § 712-1240.8 after repealing an earlier version of the methamphetamine trafficking statute, HRS § 712-1240.6.  2006 Haw. Sess. Laws Act 230, § 4 at 998-99 (enacting Chapter 712, part IV); 1024 (repealing HRS § 712-1240.6).  Simultaneously, Act 230 also amended HRS § 706-667 to provide for the availability of young adult defendant sentencing for persons less than twenty-two years of age at the "time of the offense" rather than at the "time of sentencing."  2006 Haw. Sess. Laws Act 230, § 25 at 1013.  Although both HRS §§ 712-1240.8 and 706-667 were dealt with in the same Act, the legislature made no apparent effort to cross-reference one to the other.  Two conclusions might be drawn from the legislature's inaction:  one that supports the State's argument that HRS § 706-667 is not a sentencing alternative following a conviction under HRS § 712-1240.8, and one that supports Casugay-Badiang's argument that it is.

### 1.  Analysis of Act 230 in Favor of the State

Act 230 was an omnibus crime bill, and neither HRS § 706-667 nor HRS § 712-1240.8 (nor the interaction between these two

21

statutes) was debated or discussed in the Standing Committee Reports, Conference Committee Reports, or on the House or Senate floor. This was probably because the bill that became Act 230 was the result of the work of the Committee to Conduct a Comprehensive Review of the Hawaiʻi Penal Code, a committee created by Act 125 of the 2005 Legislative Session which submitted a Report to the Legislature proposing the addition of seven new statutory sections, amendments to 46 existing statutory sections, and the repeal of one statutory section-- proposals the Legislature largely adopted without discussion. Compare 2006 Haw. Sess. Laws Act 230 at 996-1025 with Report of the Committee to Conduct a Comprehensive Review of the Hawaiʻi Penal Code ("Report") at 11-57 (2005). Hence, the legislature's failure to expressly cross-reference HRS § 706-667 with HRS § 712-1240.8 does not necessarily reflect a deliberate intent to retain HRS § 706-667 as a sentencing alternative to HRS § 712-1240.8(3). If anything, such cross-reference was unnecessary, given the legislature's drafting of HRS § 712-1240.8(3) to exclude "any other law to the contrary," with young adult defendant five-year indeterminate term sentencing contrary to the ten-year indeterminate term called for in HRS § 712-1240.8(3). See Cisneros, 508 U.S. at 18 ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the

22

provisions of the 'notwithstanding' section override conflicting provisions of any other section. . . . A clearer statement is difficult to imagine.")(citation omitted).

Moreover, the Committee that drafted the legislative proposals that eventually became Act 230 identified crystal methamphetamine abuse as "the dominant issue in the criminal justice system," affecting "most criminal cases" and "most of the defendants who are sent to prison." Report at 5. Thus, to the Committee, the problem of methamphetamine in general was of primary concern.

### 2. Analysis of Act 230 in Favor of Casugay-Badiang

Nevertheless, the legislature's amendment to HRS § 706-667 in 2006 to set the defendant's eligibility date for young adult defendant sentencing as the "time of the offense," versus the "time of sentencing" also indicates the legislature's intent to increase a sentencing court's discretion to apply HRS § 706-667 by increasing the pool of defendants eligible for young adult sentencing. There is no legislative discussion of the amendment to HRS § 706-667. The Report, however, explains that the change was intended to prevent the unfairness that resulted when the would-be young adult defendant aged out of eligibility for sentencing under HRS § 706-667 simply based on when the sentencing court scheduled his or her sentencing hearing. See

23

Report at 27r.  Thus, the increased sentencing discretion added to HRS § 706-667 contradicts any purported legislative intent to simultaneously decrease sentencing discretion via the enactment of HRS § 712-1240.8.  This is particularly true where the legislature did not include Methamphetamine Trafficking in the Second Degree among the other offenses for which young adult defendant sentencing is unavailable.  See HRS § 706-667(3)("This section shall not apply to the offenses of murder or attempted murder.").

The legislature could have cross-referenced HRS §§ 706-667 and 712-1240.8, if it had so intended, in Act 230.  Tellingly, Act 230 also amended another statute, HRS § 706-622.5, to expressly exclude HRS § 712-1240.8.  2006 Haw. Sess. Laws Act 230, § 18 at 1009.  HRS § 706-622.5 states, in relevant part, with emphasis added, "Notwithstanding section 706-620(3), a person convicted for the first or second time for . . . any felony offense under part IV of chapter 712 . . . [but] not including any methamphetamine trafficking offenses under sections 712-1240.7 and 712-1240.8, is eligible to be sentenced to probation . . . ."  Thus, if the legislature intended to exclude Methamphetamine Trafficking from HRS § 706-667, it could have done so, as it did with HRS § 706-622.5, but it did not.

24

## D. Policy Considerations

Given the difficulties in divining the legislative intent behind Act 230, an examination of the legislature's stated policies behind HRS §§ 706-667 and 712-1240.8 may provide needed guidance. Both statutes were chosen for unique treatment by our legislature. Both statutes are undergirded by powerful policy considerations.

### 1. Policy Considerations behind Hawaiʻi's Carve-Out for Methamphetamine Trafficking

On one hand, the legislature has singled out methamphetamine trafficking as requiring sentencing separate from the general sentencing provisions found in Chapter 706. The legislature first carved out methamphetamine trafficking for separate sentencing in 2004 when it passed Act 44. 2004 Haw. Sess. Laws Act 44, § 3 at 204-27; see also H. Stand. Comm. Rep. No. 495-04, in 2004 House Journal, at 1604 ("Amending the new offense of unlawful methamphetamine trafficking to . . . . [s]pecify that other statutes relating to sentencing do not apply to the offense of methamphetamine trafficking[.]"). Act 44 resulted in the codification of HRS § 712-1240.6, which set classes of methamphetamine trafficking offenses according to the weight of methamphetamine, and set mandatory prison terms and fines according to the class of offense. HRS § 712-1240.6 (Supp. 2004).

The new carve-out was pursuant to the legislature's finding "that new and enhanced criminal penalties are needed to protect [Hawaiʻi's] citizens from the effects of the ice epidemic." 2004 Haw. Sess. Laws at 205. The legislature stated that "the use of and addiction to crystal methamphetamine (especially in the form known as 'ice') . . . has reached epidemic proportions and is currently considered a public health crisis. 2004 Haw. Sess. Laws at 204. HRS § 712-1240.6 was repealed in 2006 and replaced with our current methamphetamine trafficking statutes, HRS Chapter 712, Part IV.

### 2. Policy Considerations behind Hawaiʻi's Young Adult Defendant Sentencing

On the other hand, the legislature has also singled out young adult defendants for specialized sentencing due to their immaturity and potential for rehabilitation. HRS § 706-667 is based on the Model Penal Code, Tentative Draft 7. Putnam, 93 Hawaiʻi at 369, 3 P.3d at 1246 ("HRS § 706-667 is based on the Young Adult Offender statute, Section 6.05 of the Model Penal Code, and is in relevant part similarly worded."). The Commentary to HRS § 706-667 contains a cross-reference to the Model Penal Code, Tentative Draft No. 7, comments at 24, which explains the general policy behind young adult sentencing as follows:

> [T]he incidence of criminality and of recidivism in this age span is distressingly and disproportionately high; that these are still, however, formative years in personal development; and that these individuals involved have many years of active life ahead.  Prudence and humanity combine, therefore, to argue for a specialized and concentrated effort in this area.

Model Penal Code, Tentative Draft No. 7, comments at 24 (1957); Putnam, 93 Hawaiʻi at 369-70, 3 P.3d at 1246-47 (citing to the Model Penal Code, Tentative Draft No. 7); see also Model Penal Code Part I Commentaries, vol. 3 at 75 (1985)(finalizing draft comments similarly).

The Commentary to HRS § 706-667 also explains the philosophy behind discretionary sentencing and special terms of imprisonment for young adult defendants:

> [T]he Code adopts a flexible approach in sentencing. The court is not compelled to impose a special term in the case of a convicted young adult.  It may, according to the provisions of Part II of this Chapter, suspend the imposition of sentence or sentence the defendant to probation. If the court determines that imprisonment is necessary, the court is free, within the limitations heretofore set forth, to choose between the special term authorized by this section and the ordinary and extended terms authorized by prior sections in this Part. Subsection (3) merely authorizes the employment of a special, more limited term of imprisonment "if the court is of the opinion that such special term is adequate for... [the defendant's] correction and rehabilitation and will not jeopardize the protection of the public." Assuming the court is satisfied that this condition can be met, there seems no reason for not allowing the court, if it chooses, to protect the young offender from the longer maxima provided for felonies.

HRS § 706-667 cmt. (1993 & Supp. 2006)(emphasis added).  Other passages in the Model Penal Code, Tentative Draft 7, illuminate further policy reasons behind specialized young adult sentencing. For example, as to why youthful offenders should receive a

27

shorter term of imprisonment than ordinary offenders, the American Law Institute reasoned as follows:

> We recognize the theory . . . that . . . a longer term is more reformative than a short, definite sentence to jail. This is a case, however, where we think that theory has outrun a sense of just proportion. Simple regard for personal liberty – of young no less than of mature adults – requires, in our view, that younger people not be subject to more onerous sentences because of their immaturity. We can perceive no adequate basis for sentencing young adults, whose offenses reveal no substantial danger to the community, to sentences as long as those imposed for major crimes.

Model Penal Code, Tentative Draft 7, comments at 28.

### IV. Conclusion

There are strong arguments both for and against retaining discretion to sentence under HRS § 706-667 following a conviction under HRS § 712-1240.8. As analyzed above, however, there exists enough ambiguity in the language of both statutes, their relationship to each other, and the legislature's actions (and inaction) with regard to each that the rule of lenity applies in this case. "[W]here a criminal statute is ambiguous, it is to be interpreted according to the rule of lenity. Under the rule of lenity, the statute must be strictly construed against the government and in favor of the accused." State v. Bayly, 118 Hawaiʻi 1, 15, 185 P.3d 186, 200 (2008)(citation omitted).

In addition, based on the totality of the circumstances, it appears the legislature considers HRS § 706-667 a separate and unique sentencing overlay to all other indeterminate term

sentencing statutes (except murder and attempted murder) such that HRS § 706-667 would not be "contrary" to HRS § 712-1240.8(3).[8]  First, the plain language of HRS § 712-1240.8 does not enumerate HRS § 706-667 among the other five statutes excluded from consideration in sentencing for Methamphetamine Trafficking in the Second Degree.  HRS § 712-1240.8(3).  Further, the catch-all phrase "notwithstanding any other law to the contrary," under Lau, has not been interpreted to limit the availability of young adult sentencing.  Lau, 73 Haw. at 263, 831 P.2d at 525.  Even if HRS § 706-667 could be viewed as conflicting with HRS § 712-1240.8(3)'s sentencing provisions, we have already held that the young adult defendant sentencing statute, as the more specific statute, "is to be favored and would control," over other general sentencing statutes like HRS § 712-1240.8(3).  Putnam, 93 Hawaiʻi at 371, 3 P.3d at 1248.

Second, young adult defendant sentencing is "in lieu of any other sentence of imprisonment" for any other offense except murder and attempted murder.  HRS § 706-667(3).  Under Pacariem, the limitation set forth in HRS § 706-667(3) is restrictively viewed.  Pacariem, 67 Haw. at 48, 677 P.2d at 464-65.  Methamphetamine Trafficking in the Second Degree is not listed

---

[8]     If the legislature disagrees with our interpretation of HRS § 706-667, as it apparently did following Pacariem, it has the power to amend HRS § 706-667 (and/or HRS § 712-1240.8) to clarify that young adult defendant sentencing is not available following a conviction for Methamphetamine Trafficking in the Second Degree.

along with murder and attempted murder, indicating that the court retains discretion to sentence under HRS § 706-667 following a conviction under HRS § 712-1240.8.

Third, when the legislature simultaneously amended HRS § 706-667 and enacted HRS § 712-1240.8 in 2006, it did not cross-reference those statutes with each other to indicate that young adult sentencing was not available following a conviction under HRS § 712-1240.8.  2006 Haw. Sess. Laws Act 230, §§ 4, 25 at 998-99, 1013.  Through that same act, the legislature demonstrated its ability to so cross-reference when it excluded HRS § 712-1240.8 from HRS § 706-622.5.  2006 Haw. Sess. Laws Act 230, § 18 at 1008.  Therefore, it appears that the legislature did not intend to exclude HRS § 706-667 as a sentencing alternative to HRS § 712-1240.8(3).

Fourth, the policy considerations behind HRS § 706-667 indicate that young adult defendants are intended to be spared from the same sentences imposed on adults for major crimes like methamphetamine trafficking.  Model Penal Code, Tentative Draft 7, comments at 28.

As such, we hold that the sentencing court did retain discretion to sentence Casugay-Badiang under HRS § 706-667. Accordingly, the ICA's Judgment on Appeal is reversed.  The

30

circuit court's Judgment of Conviction and Sentence and Order

Denying Motion to Correct Illegal Sentence are affirmed.

Ronette M. Kawakami                /s/ Simeon R. Acoba, Jr.
(Summer M. M. Kupau
with her on the briefs)            /s/ Sabrina S. McKenna
for petitioner
                                   /s/ Richard W. Pollack
James M. Anderson
for respondent